*41 Chief Judge Conway.
In 1939 Crossroads Recreation, Inc. (hereinafter referred to as “ Crossroads ”) acquired a triangular-shaped parcel of land in the Village of Mount Kisco (hereinafter referred to as the “ Village ”). At that time, the land was vacant except for a gasoline station — erected in and operating since 1928 — which was located at the southerly end of the property. Shortly after Crossroads’ purchase of the property, it installed bowling alleys in the middle of the parcel. The northerly portion of the parcel, however, remained vacant. In 1945 the Building Zone Ordinance of the Village was amended so as to prohibit the use of the property, located in a Business “A” district, as a gasoline station. Thereafter, in such a Business “A” district, only retail stores generally, real estate offices, etc., were permitted uses. Thus did the use of the property as a gasoline station become a nonconforming use. In the early part of 1955, Crossroads entered into a one-year *42 lease for the gasoline station 'with Ke'sbec, Inc;, with -a provision that, if permission were granted to ‘enlarge and modernize the 'station, Kesbec would enter into -a 20-ye'a'r íeásb with Crossroads. One PietrObono, "who had been operating the gasoline 'station since 1947, as a subtenant of 'an earlier tenant of Crossroad's, entered liito a sublease With Ke'sbec.
On October 3, 1955 Crossroads, joined by Kesbec, applied tb the building inspector of'the Village for permission to tear-down the existing gasoline station and to ’eretit in its stead a modé’rh and much larger "establishment. While it is 'olear here, 'and no one questions the fact, that the petitioners may continue ’to operate the gasoline station us it presently exists — "because it Was devoted to "such a 'Use prior to 1945, when the ’prohibitory zoning ordinance took effect (see People v. Miller, 304 N. Y. 105, 107)— the .petitioners may not “ enlarge that use as a matter of right ” (Matter of Chandler v. Corbett, 274 App. Div. 1073, 1074). Were that not so, 'zoning 'laws would, "in -effect, "be rendered "nugatory and nonconforming parcels, "as a result, would assume great ’values — “a premium Would then be "the -reward for violating the law ” (Matter of Pisicchio v. Board of Appeals, 185 Misc. 156, 157). The present condition of -the .gasoline station "may be summed up thus: The size "of the building is about Í6 feet by 20 to 22 féét; there are'hb rest rooms;"there'are no indoor lubritorium facilities; there is only an outside lift for lube work; there are 'two -pump islands with Wo pa-naps bn bach island; ’there -are two 2’000-gallbn Underground -.gasbEte 'tanks, there is one IjOOO-galldír underground tank, and there are four SSO-gallon tinGlergrouted failles. The gasoline Station-sought to be erected'Would take the following form.: The sold building Would be torn down and -replacedby a building -45 feet by 30 feet-; the new building 'Would include a safes -office, a -storage robm, -two rest rooins, ail'd two lubrito'riu®. bays; the outside lift would be removed; 'the tWb pump islands would be removed; -three new pump’islands Would be installed 'with two pumps -on each island; the' séven Underground gasoline tanks 'would be retained, and ¡a new 3,-000-galon underground tank would be installed. On October 4, 1955 the building inspector denied-the application oh the grotthd that the proposed action Would he violative Of subdivision (b) Of -section 2 of the Building Zone Ordinance, which provides that “no building of ’Structure containing a *43 non-conforming use shall * * * be hereafter extended or enlarged except in conformance with the provisions of this ordinance.”
On October 10, 1955 the petitioners appealed to the Board of Appeals of the Village and made application for a variance pursuant to subdivision (2) of section 19 of the Building Zone Ordinance on the ground of “ unnecessary hardships in the way of carrying out the strict letter of this ordinance ”. After a public hearing was had, at which time testimony was adduced and exhibits submitted, the Board of Appeals, in unanimously denying the application for a variance, found, inter alia, that the petitioners failed to prove the requisite hardship. The Appellate Division confirmed that determination.
The Board of Appeals may grant a variance on the ground of hardship where the record shows that “ (1) the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone; (2) that the plight of the owner is due to unique circumstances and not to the general conditions in the neighborhood * * *’; and (3) that the use to be authorized by the variance will not alter the essential character of the locality ” (Matter of Otto v. Steinhilber, 282 N. Y. 71, 76). Since the record here does not, as we shall demonstrate, show that i( the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone ”, we need not consider the requirements numbered (2) and (3) above.
Petitioners contend, because of the inadequacy of parking facilities, that there was no conforming use to which the property could be put; that, because of the shape and size of the property, the only use to which it could be put was that of a gasoline station; that the “ Sinclair ” gasoline station — located across the street from the petitioners’ station — was granted permission to modernize its station; that petitioners’ station has no rest rooms and no indoor lubritorium facilities; that a modern and much larger station would beautify the property; and that, therefore, they should be allowed to demolish their existing station and, in its stead, to erect a modern and much larger gasoline station — otherwise, they would not be able to “ face the competition.”
We are in agreement with the Board of Appeals that there was here a failure of proof as to the requisite “ hardship ” which must be shown to warrant the granting of a variance.
*44 In order to demonstrate hardship, the petitioners had the burden of showing that “ the land in question cannot yield a reasonable return if used only for a purpose allowed in that zone Since the operation of their gasoline station, as it presently exists, was a nonconforming use which was suffered to continue because it had been devoted to such a use before the prohibitory zoning ordinance took effect, it was a use which was “allowed in that zone”. Business “A” uses, such as retail stores generally, real estate offices, etc., were also, of course, “ allowed in that zone ”. Hence, the petitioners had the burden of proving that their property could not yield a “ reasonable return” if used for a gasoline station (as it presently exists) or for any Business “ A” use (retail stores generally, real estate offices, etc.).
There is no proof whatever in this record to show: (1) the amount of purchase price paid by Crossroads for the entire parcel of property; (2) the present value of the entire parcel of property or any part thereof; (3) the expenses and carrying charges in connection with the maintenance of the entire parcel of property or any part thereof; (4) the amount of taxes on the entire parcel of property or any part thereof; (5) the amount of any mortgages, liens or other incumbrances, if any, on the entire parcel of property or any part thereof; (6) the amount of annual income realized by the gasoline station— before the Sinclair station had been modernized, and after the Sinclair station had been modernized; (7) the amount of annual income realized by the bowling alley business; (8) the amount of rent paid to Crossroads by its earlier tenant, the operator of the bowling alley business; and (9) an estimate as to what a reasonable return on the entire parcel of property or any part thereof should be — based on the initial investment of Crossroads or the present value of the property.
Actually, the only “ dollars and cents ” proof offered — and, because it was isolated, it was indeed meaningless and innocuous —was that Crossroads presently realizes a rental of $150 per month from Kesbec under its one-year lease of the gasoline station and that, if the variance be granted, Kesbec would spend $40,000 to $50,000 to erect a modern and much larger gasoline station, and would then pay Crossroads a rental of $200 per *45 month for 20 years. Similarly, the proof offered through Pietrobono was entirely unavailing. Pietrobono testified that before the Sinclair gasoline station had been modernized, the petitioners’ station “ did pretty good but after the Sinclair station had been modernized, to quote Pietrobono, they could not “face the competition.” The fatal omission in that testimony is obvious. There simply were no underlying facts adduced which permitted of the conclusion that the gasoline station of petitioners was — as a result of and after the modernization of Sinclair’s station — a losing proposition. It may well be that Crossroads’ station did lose some business as a result of Sinclair’s modernization but, since there is not an item of proof to indicate the extent to which Crossroads suffered a reduction in business, there is no basis for the conclusion that its income was less than a reasonable return. Actually, there should at least have been proof as to what the income of Crossroads’ station was before the Sinclair station was modernized, and what the income was after the Sinclair station was modernized. Only thus could loss of business, if any, be measured. But even then, in the absence of additional proof as to taxes, expenses, carrying charges, etc., the problem of whether the reduced income was or was not a reasonable return would have to be faced.
In any event, as we see it, because the essential elements of proof, as earlier enumerated, were here wanting, this record is entirely devoid of any basis or yardstick whereby a reasonable return — based on the initial investment of Crossroads or the present value of the property — could be measured and ascertained. Plainly, before a claim that a property is yielding less than a reasonable return may properly be interposed, the reasonable return for that property must first be known or at least be ascertainable. Since the petitioners had the burden of proving that the property in question cannot, if used for an allowed purpose, yield a reasonable return, the failure of proof above referred to must be deemed fatal to petitioners’ claim that the gasoline station, as it presently exists, is not yielding a reasonable return. For that reason alone, the petitioners must be deemed to have failed to establish the requisite hardship to warrant the granting of a variance to permit them to demolish *46 the present station and to erect a modern and much larger one in its stead (see Matter of Young Women’s Hebrew Assn. v. Board of Standards & Appeals, 266 N. Y. 270, 274, 275-276).
It may well be true that the petitioners would realize a greater return if permission were granted to modernize and enlarge the existing gasoline station. It does not follow, however, that, because the requisite permission is withheld, the petitioners are suffering a hardship. The only pertinent inquiry is whether the present allowed use is yielding a reasonable return. That it may not be the most profitable use is immaterial. (See People ex rel. Werner v. Walsh, 212 App. Div. 635, 640, affd. 240 N. Y. 689; Franklin v. Incorporated Vil. of Floral Park, 269 App. Div. 695, 696, affd. 294 N. Y. 862; Matter of Reed v. Board of Standards & Appeals, 255 N. Y. 126, 134; Matter of Stillman v. Board of Standards & Appeals, 222 App. Div. 19, 20, affd. 247 N. Y. 599; Matter of Falvo v. Kerner, 222 App. Div. 289, 291.) It also may well be true that the property in question would be beautified if permission were granted to demolish the present gasoline station and to erect a new, modern and much larger station. The proposed beautification o.f the property, however, has no bearing on the question whether petitioners are presently realizing a reasonable return from their present use of the property (cf. Matter of Fortuna v. Murdock, 257 App. Div. 993, affd. 281 N. Y. 763).
The mere fact that the Board of Appeals had recently granted the Sinclair gasoline station — located across the street from petitioners’ station — permission to modernize, does not provide the petitioners with a valid basis for insisting on a variance here. In Matter of Larkin Co. v. Schwab (242 N. Y. 330, 336) this court declared: ‘1 The mere fact that consents were granted to owners of premises somewhat similarly situated does not in itself show that consent was arbitrarily refused to this applicant. The question is not whether someone else has been favored. The question is whether the petitioner has been illegally oppressed. Exercise of discretion in favor of one confers no right upon another to demand the same decision. * * * There are, of course, extreme cases where analogy is so complete, where grant of consent under similar circumstances has been so frequent, both before and after refusal in one instance, that inference arises that the refusal is the result of unfair *47 discrimination and oppression. ’ ’ The present case was clearly not an1 ‘ extreme ’ ’ case as envisaged by the Larkin decision. On this record, we know only that <£ Sinclair ” was a gasoline station located across the street from petitioners’ station and that, recently (about a year before the instant public hearing was held), Sinclair had been granted permission to modernize its station. There was not an item of proof relating to the size of Sinclair’s property, the shape of its property, the earlier condition of its building, the value of its property, the return realized from its property, etc. Hence, there was here no room for a finding that Sinclair’s property and petitioners’ property were, in the requisite and material respects, substantially similar. That being so, the denial of a variance here cannot be said to have been arbitrary (see, also, People ex rel. Werner v. Walsh, 212 App. Div. 635, 638, affd. 240 N. Y. 689, supra; People ex rel. Fordham M. R. Church v. Walsh, 244 N. Y. 280, 289; People ex rel. Sullivan v. McLaughlin, 266 N. Y. 519, 520).
Since, as earlier demonstrated, on this record, the petitioners have not shown that their use of the property as a gasoline station (as it presently exists) cannot yield a reasonable return, it of course becomes unnecessary for us to consider the petitioners’ claim that the property, if used for Business “A” purposes (retail stores generally, real estate offices, etc.) would not yield a reasonable return because of inadequate parking facilities.
The petitioners further contend that the members of the Board of Appeals, in arriving at their determination, must be guided by the testimony of the witnesses called before them and, if they choose to act on information or knowledge acquired otherwise, such undisclosed facts must be set forth in their return. Obviously, in aid of intelligent review on appeal, that must be so. It may not be said here, however, that the Board of Appeals, in denying the application for a variance, was not guided by the testimony of the witnesses produced before it. Bather, that is precisely what led the board to conclude that there was here a fatal failure of proof as to hardship. We suspect that petitioners’ intimation that the board — in denying the application for a variance — must have acted on nonrecord facts, which were not disclosed in its return, is predicated on the assumption that the testimony of petitioners’ real estate experts conclusively *48 established the requisite hardship. As we have demonstrated earlier, and as the board here found, there was a fatal failure of proof as to hardship. Thus is the assumption made by petitioners erroneous and the conclusion based thereon unwarranted.
Since the board’s finding that there was a failure of proof as to hardship is sustained by this record, we need not consider the alternative finding of the board that, even if there were a hardship, petitioners would still not be entitled to a variance for the reason that such hardship was “ self inflicted.”
The order of the Appellate Division should be affirmed, with costs.