W. Waverly TAYLOR, Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 6954.

District of Columbia Court of Appeals.

Argued May 1, 1973.

Decided July 20, 1973.

Norman M. Glasgow, Washington, D. C., with whom Whayne S. Quin and John F. McCabe, Jr., Washington, D. C., were on the brief, for petitioner.

Leo N. Gorman, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before FICKLING, KERN and GALLAGHER, Associate Judges.

FICKLING, Associate Judge.

Petitioner seeks review of an order of the District of Columbia Board of Zoning Adjustment (hereinafter the Board) denying him a variance which would have had the effect of rezoning his property R–3 (row dwellings with minimum lot dimensions of 20 feet in width and 2,000 total square feet). He requested a variance to construct 27 row houses in an R–1–B district (detached single-family homes with minimum lot dimensions of 50 feet in width and 5,000 total square feet.)

Petitioner contends that the Board erred in characterizing his requested variance as a use variance rather than an area variance and, consequently, that it placed a greater burden on him than is required by law. Additionally, he argues that the evidence before the Board was sufficient to meet the even higher burden which was imposed. We disagree with both of petitioner's contentions and affirm.

In the interest of clarity, two diagrams are set out *infra* at 232 and will be referred to throughout the opinion.

The subject matter of this petition consists of Lot 825 and parts of Lots 818 and 819, all located in Square 1368. This property fronts on the 4600 block of MacArthur Boulevard, N.W., Washington, D.C. [Diagram I]. Petitioner also owns the property directly to the rear of the subject property and, for a number of years, has been developing this area as the Dumbarton Subdivision [Diagram I]. All of the subdivision is located in an R–1–B district [Diagram II]. Recently, petitioner acquired Lot 825 from the Corps of Engineers in order to facilitate the orderly development of the Dumbarton Subdivision. Petitioner in his subdivision plans details R–1–B conforming lots on the southwest side of Charleston Terrace [Diagram I], however, in so doing he has created a rather elongated sliver of property on MacArthur Boulevard [Diagram I]. Not only is this property shallow (in places, as narrow as 85 feet), but also its topography is rather extreme. There is an increase of approximately 25 feet in elevation from the front edge (MacArthur Boulevard) of the property to the rear. There is an additional problem of a drainage easement which bisects the property [Diagram I]. Also, petitioner asserts that R–1–B development is hindered by the close proximity of a small C–1 district (neighborhood shopping)

and an R–5–A district (general residence) [Diagram II].

DIAGRAM I

Subject property

Recently acquired from United States government— Lot 825

5-18 Houses on subdivision plot—to be built

DIAGRAM II

This diagram reflects the various zone districts surrounding the subject property.

Subject property

[A9043]

In consideration of the problems set out above, petitioner determined that he could not economically develop this property with detached single-family homes. He therefore applied to the Board for a variance to construct 27 row houses, essentially in compliance with R–3 district requirements.[1] After a hearing[2] his request was denied. The Board was of the opinion that "appellant has not proved a hardship within the meaning of the variance clause of the Zoning Regulations and that a denial of the requested relief will not result in peculiar and exceptional practical difficulties and undue hardship upon the owner."

I

Petitioner's first contention is that the Board erred in characterizing his requested variance as a use rather than an area variance and, consequently, erred in requiring him to meet a heavier burden of proof than is required by law. Petitioner's initial difficulty in making this contention is the following exchange which took place at the beginning of the hearing.

CHAIRMAN SCRIVENER: It is a use variance?

MR. GLASGOW [Attorney for Petitioner]: It is a use variance and a variance as to the height and the yard and court requirements.

In other words, petitioner characterized his requested variance as a use variance and additionally attempted to meet the use-variance burden of proof. With this exchange in the record, we would have great difficulty in finding that the Board erred in applying the precise standard petitioner requested. However, for reasons set out *infra* we need not rest our decision on such a narrow ground.

It is clear from this record that the Board interprets the regulations which were adopted by the Zoning Commission to differentiate on the basis of use among detached, semi-detached, and row dwellings, as well as between single-family and multiple-family dwellings. *See* Zoning Regulations, Art. 31, § 3101 et seq. Therefore, our only task is to determine whether the Board's interpretation is plainly erroneous or inconsistent with the regulations. *See* Bowles v. Seminole Rock & Sand Co., 325 U.S. 410, 65 S.Ct. 1215, 89 L.Ed. 1700 (1945). In making that determination we must examine the statutory authority of the

---

1. Petitioner also requested a story variance but not a height variance.

2. Other evidence presented at this hearing will be discussed in detail *infra*.

Board to grant variances, because it is that statute (as interpreted by this court) that requires the imposition of varying burdens of proof.

The statute involved, D.C.Code 1967, § 5–420(3), reads in pertinent part:

> Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in *peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property*, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. [Emphasis added.]

In Palmer v. BZA, D.C.App., 287 A.2d 535 (1972), the court read the emphasized language in the disjunctive and required the more stringent standard (exceptional and undue hardship) with respect to the more drastic relief inherent in a use variance. *Id.* at 541. The court, however, did not have to elaborate on the distinction between use and area variances in that case because it determined that the intervenor had failed to meet either standard. The court did note that there could be hybrid variances as well as pure use or area variances. *Id.*

The decision to read the statute in the disjunctive was predicated on the court's view that, in general, area variances involve minor alterations to the character of the zoned district while use variances tend to drastically change the district's na-ture. While the rationale of courts in other jurisdictions is not always expressed, it is clear that the more drastic the requested variance, the greater the burden of proof that is required. Palmer v. BZA, *supra*, at 540–542; 2 A. Anderson, American Law of Zoning §§ 14.06, 14.07 (1968) (hereinafter Anderson); 3 Anderson §§ 14.45, 14.-68; A. Rathkopf, The Law of Zoning and Planning Ch. 45 (3d ed. 1962). We now turn to an examination of the facts of the requested variance to determine if the Board's imposition of the heavier burden was plainly erroneous.

Petitioner stresses the fact that he wishes to build single-family dwellings in a district zoned for single-family dwellings. He argues that all he is requesting is a variance from the height, side yard, court, and lot occupancy regulations. However, his own testimony indicates that if he builds in compliance with the Zoning Regulations, he can only construct 10 fully detached single-family dwellings with building lots of over 6,700 square feet. Further, because of the housing market, each home will have to sell for a figure substantially in excess of $100,000. His requested variance would allow the construction of 27 row houses on lots of just over 2,000 square feet. This would allow petitioner to almost triple the family density. Additionally, the row houses would not be in character with the other properties in the zoned district, which are fully detached.

We are of the opinion that while the requested variance may not be a use variance in its "purest form," it is a hybrid variance which would drastically alter the character of the zoned district. Therefore, applying the rationale of *Palmer* to the instant case, we feel that the Board correctly applied the undue hardship burden to petitioner's requested variance, which might well be described as a use-area variance. *See* 3 Anderson § 14.45 *and compare* Wilcox v. Zoning Board of Appeals, 17 N.Y.2d 249, 270 N.Y.S.2d 569, 217 N.E.2d 633 (1966). On this record we cannot say that the Board's interpretation of its own regula-

tions was either plainly erroneous or inconsistent with those regulations.

## II

Our decision that the Board applied the correct standard does not, however, conclude our consideration of this cause. Petitioner further contends that the uncontradicted evidence he submitted to the Board requires that the variance be granted, even assuming (as we have now decided) that the higher burden is applicable.

■ It is fundamental that the property owner who appeals to the Board for a variance from the strict application of the Zoning Regulations has the burden of demonstrating that he qualifies for the requested relief. Annot., 168 A.L.R. 13, 113 (1947); 8 E. McQuillin, Municipal Corporations § 25.167 (3d ed. 1965); 101 C.J.S. Zoning § 306 (1958). And proof that the circumstances which create the hardship *uniquely* affect the *petitioner's property* is a necessary predicate for the granting of a use-area variance. *See Palmer, supra,* 287 A.2d at 539, and cases cited therein at n. 12.

■ The reason for this initial requirement is that if the circumstances affect not only the subject property but also the entire neighborhood, then the proper procedure is to challenge the reasonablenes of the regulation before the Zoning Commission rather than to seek a variance. The granting of a variance where the circumstances do not uniquely affect the petitioner's property could lead to similar requests by other property owners, which, as a matter of due process, would have to be granted. Approval of such requests would be tantamount to an amendment of the zoning map or regulations, and the Board is without power to do this directly[3] or indirectly.[4]

Evidence which petitioner relies on to support the uniqueness of his hardship,

which has not been set out previously,[5] is as follows.

Petitioner presented the written statements of four witnesses. They were Mr. Taylor, petitioner in this cause, Mr. Albert Virostek, Jr., Vice President of Waverly Taylor, Inc., Mr. Walter Marlowe, architect for Waverly Taylor, Inc., and Mr. Frank Doyle, a local realtor.

Mr. Taylor's statement described the previous adverse ownership of Lot 825 by the United States government.

Mr. Virostek's statement indicated that he had been involved in residential construction since 1956 and that he had been with Waverly Taylor, Inc., since 1967. He was of the opinion that the subject property could not be developed with detached houses. However, he felt that row houses could be designed and built which would be compatible with the Dumbarton Subdivision. The statement further described the difficulties involved in building these row houses. It was Mr. Virostek's estimate that, because of the extreme topography, it would cost an additional $94,500 to build the 27 row houses [excavation and reinforcing costs].

In Mr. Marlowe's statement, he described the row houses he had designed for the subject property. He explained that in order to provide saleable, high quality row houses, it would be necessary to build four-story dwellings with two levels above ground at the rear of each house. This would enable the developer to "avoid the massive and objectionable exterior steps used in the older houses built on MacArthur Boulevard *where the same steep topographic conditions exist* and which are a serious hazard to the occupants. . . ." (Emphasis added.) He added that the lots were sized "so they are neither too large nor too small to *assure* an economically feasible develop-

---

3. *See* D.C.Code 1967, § 5-420.

4. *See Palmer, supra* at 539. *See also* Comment, Zoning Variances, 74 Harv.L. Rev. 1396, 1403 (1961).

5. *See* text *supra* at 231–32, 233.

ment in keeping with the existing character of the area." (Emphasis added.)

Mr. Doyle's statement described the structures in the immediate area. He then indicated that, in his opinion,

> [t]o build 10 detached houses on the site to substantially comply with zoning regulations would be economically unsound. An estimated value of $5.00 per square foot would run the cost of the 6,752 square feet per lot to $33,760.00. This figure would call for detached houses considerably in excess of $100,000.00, which, in my opinion, the area would not support and *the venture would be extremely hazardous.* [Emphasis added.]

Mr. Doyle was also called to testify personally. In answer to Chairman Scrivener's question concerning the topography along MacArthur Boulevard, he stated:

> Specifically, I live at 5631 MacArthur Boulevard. I am the only house between Macomb and Manning and the rest of the block, *the elevation is so high, I think it would be impossible to build any houses there.* [Emphasis added.]

Two comments by petitioner's counsel also reflect on the putative uniqueness of petitioner's hardship. Board Member Harps asked counsel for the petitioner:

> MR. HARPS: Would you give us about 60 seconds on hardship from the point of view that a hardship is not generally considered to be a hardship to us, *unless it is unique and the fact that MacArthur Boulevard running from Reservoir Road north is as steep as that in many places that they cut as much as 30 feet, as you know. The topography is not really a special hardship on MacArthur Boulevard.* [Emphasis added.]

> \* \* \* \* \* \*

> MR. GLASGOW: The zoning regulations state in the first part—and if you read the regulations carefully—the first part says that if you have topography and you have extraordinary shape and so forth. Then you get down to the other point, where you come to the unique part. *It doesn't say you have to have a unique topographic condition.* It says in the second section, if you have some other conditions that shall be unique, but it doesn't require that topography be unique. [Emphasis added.]

Later, he added:

> Mr. Chairman, we don't want to leave the impression you can't build single family houses on some of these lots. We say we have a special situation and condition here and we have outlined it.

> On the next block up, we are going— *with the same grades running up*—to build single family houses. We can't built [*sic*] them here. [Emphasis added.]

 We are of the opinion that petitioner simply did not meet his burden of proving the uniqueness of his hardship.[6] In fact, petitioner's counsel seems to predicate uniqueness on only the shallowness of the lots and the proximity of the C–1 and R–5–A districts. He did not disagree with Mr. Harps that the topography was not unique. It is clear that the shallowness of the lots is a self-imposed hardship which is entitled to only slight weight if any. *See* 3 Anderson § 14.53; 2 Anderson §§ 14.41, 14.42. And it is axiomatic that if a city is divided into differing zoning districts, boundary lines must be drawn somewhere. Courts universally agree that, unless special factors exist, the mere nearness of adverse zoning does not warrant the granting of a variance. *See* 2 Anderson § 14.37.

 We are likewise of the opinion that petitioner did not present evidence which would require us to reverse the Board's conclusion that petitioner "has not proved a hardship within the meaning of the variance clause of the Zoning Regulations. . . ." Petitioner failed to demonstrate

6. *See* note 4, *supra.*

that the "hardship" could not be alleviated by redrawing his subdivision. *See* 2 Anderson § 14.41; 3 Anderson § 14.53. He did not attempt to show his cost of the subject property or the amount of taxes he had paid. *See* In re Crossroads Recreation, Inc. v. Broz, 4 N.Y.2d 39, 44–45, 172 N.Y.S.2d 129, 132–133, 149 N.E.2d 65, 67–68 (1958); Somyk v. Zoning Board of Review, 99 R.I. 255, 207 A.2d 34, 36 (1965); 2 Anderson § 14.20. No evidence was offered as to the cost of preparing the subject property for detached dwellings. *See* Bonitati Bros. v. Zoning Board of Review, 99 R.I. 49, 205 A.2d 363 (1964). *Compare* Mr. Virostek's statement as to additional costs of building the *row houses*. The evidence as to economic hardship was conclusionary in nature as well as form (*i. e.*, without underlying basis). *Compare Bonitati Bros., supra.*

Additionally, it is undisputed that petitioner bought the property with a knowledge of the zoning restrictions and the general condition of the neighborhood. *See* 2 Anderson § 14.42; 3 Anderson § 14.53; Comment, Zoning Variances, 74 Harv.L. Rev. 1396, 1403 (1961).

■ It appears that what petitioner wanted the Board to do was to guarantee that he would make a profit. Mr. Marlowe's statement was to the effect that the lots had been sized *"to assure* an economically feasible development." Petitioner's expert on real estate values (Mr. Doyle) stated only that "in my opinion . . . the venture would be extremely hazardous." The Board simply has no authority to grant a variance in order to assure the petitioner a profit. *See* 2 Anderson § 14.23; 3 Anderson § 14.48.

In conclusion, we are of the opinion that the Board correctly applied the proper burden to petitioner's request, that petitioner failed to demonstrate the uniqueness of his putative hardship and, finally, that the Board's conclusion that petitioner "has not proved a hardship within the meaning of the variance clause of the Zoning Regulations" was neither arbitrary nor capricious. The decision of the Board is therefore

Affirmed.