**CLERICS OF SAINT VIATOR, INC.,**
Petitioner,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 7308.

District of Columbia Court of Appeals.

Argued Oct. 18, 1973.

Decided May 30, 1974.

J. Robert Walsh, Washington, D.C., for petitioner.

Leo N. Gorman, Assistant Corp. Counsel, Washington, D.C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D.C., were on the brief, for respondent.

Before KERN, NEBEKER and YEAGLEY, Associate Judges.

YEAGLEY, Associate Judge:

On October 27, 1971, the petitioner, Clerics of Saint Viator, Inc., filed with the respondent, District of Columbia Board of Zoning Adjustment (hereinafter referred to as the Board), an appeal for a variance from D.C. Zoning Regulations based on undue hardship. The appeal sought permission to convert an existing religious seminary located at 1212 Otis Street, N.E., in the R–1–B zoning classification to a convalescent or nursing home, as defined in the D.C. Zoning Regulations.

Following the first public hearing the variance was denied by the Board, but aft-er further argument on reconsideration it was approved on January 18, 1972. However, on May 16, 1972, the Board vacated all previous action on its part and held a new hearing on November 29, 1972. By a vote of three to one the variance was denied on March 28, 1973, and this appeal followed. The cause was then remanded to the Board at its request to permit it "to make additional findings" and a new order issued July 13, 1973. The new order states that the earlier order "is hereby amended". We note, however, that it not only enlarges on the first but in some respects is inconsistent with it;[1] as to such inconsistencies we accept the latter order as controlling.

The findings of the Board are summarized in pertinent part as follows:

The property consists of approximately 93,241 square feet of land, improved by a twelve year old modern religious seminary of approximately 29,000 square feet containing approximately 80 rooms and chapel on three floors and basement.

·The seminary was built in 1961, pursuant to a special exception granted by the Board, consisting of thirty-eight (38) small sleeping rooms, each with clothes closet and wash basin and served by common facilities. It also contains eight two-room suites, each with a connecting bath, recreation and study rooms, and classrooms.

It is zoned R–1–B, is surrounded by single family detached residences, except that its westerly line abuts a strip commercial zone running along Twelfth Street, N.E.

The number of seminarians residing at the Viatorian Seminary has steadily declined in the last several years from a high of over thirty, which increased to

---

1. The Board's original opinion stated that "the entire record does not indicate with any degree of assurance" that the proposed use will not cause traffic congestion which would threaten the residential neighborhood. The Board's second opinion is phrased differently, stating that permitting the proposed use "would create the added threat of more cars [and] in turn add measurably to pollution and congestion." In the former the Board is finding that petitioner has failed to show that the proposed use will *not* create traffic congestion while in the latter the Board affirmatively finds that there would be an "added threat of more cars".

over forty during the summer months, to a present enrollment of two.

The decrease in enrollment is due solely to the historical circumstances of decline in religious vocations and departure from the traditional seminary concept of theological education to a more dispersed format of education.

The subject property has a current assessed value of $448,258.00 and a current appraised value of $600,000.00 based upon a reproduction of improvement costs of $483,500.00 There is no ascertainable value based upon the market value.

The applicant has been unable to transfer the facility to other religious or educational institutions, and further supports his request for a variance on the ground that development of the property for R–1–B use would result in undue financial hardship.

A substantial loss of several hundred thousand dollars would be suffered if applicant attempted to utilize the property for permitted residential purposes due to the necessity of demolition, removal, and compacting back of the building foundation plus the construction of access roads to serve subdivided lots.

The proposed use, convalescent and nursing home, will tend to increase density.

The Board first contends that the variance was properly denied on the basis that the hardship, which petitioner claims, does not inhere in the land itself but, rather, is caused by the nature of the structure on the land. The Board argues that only a hardship which is inherent in the "land" can be the basis of a variance.

The applicable statute, D.C.Code 1973, § 5–420(3), which is incorporated into D.C. Zoning Regulation No. 8207.11, provides:

Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions *or other extraordinary or exceptional situation or condition of a specific piece of property*, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, [the Board is empowered] to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. (Emphasis added.)

Petitioner claims that its situation falls within that section of the statute which provides for a variance where there is an "other extraordinary or exceptional situation or condition of a specific piece of property . . . ."

We note at the outset that the applicable statute (above) uses the word "property" rather than "land" and that property generally includes permanent structures existing on the land.[2] The Board, in support of its position that the hardship must inhere in the land itself, refers us to Otto v. Steinhilber, 282 N.Y. 71, 24 N.E.2d 851 (1939). We do not see that this case lends any support to the Board's position on the land-property issue since that particular question was not under consideration. The Board's citation of 2A Rathkopf, The Law of Zoning 45–5 (1962) suffers from the same disability.[3]

2. *See* Black's Law Dictionary 1383 (4th ed. 1951); D.C.Code 1973, § 5–702(m); *see also* D.C.Code 1973, §§ 5–702(e), 5–902(f)(1).

3. In fact on the page facing the one from which the Board quotes, (45–4) Rathkopf quotes approvingly from Elwyn v. City of

A detailed discussion of the subject is found in 2 Anderson, American Law of Zoning §§ 14.28, 14.34 (1968) (hereinafter cited as Anderson), where it is stated that a variance may be granted "where the land is incapable of yielding a fair return because of obsolete or dilapidated improvements." *See also* Banister v. Board of Appeals, 65 N.Y.S.2d 15 (Sup.Ct.1946), where the existence of an obsolete structure on a parcel of land constituted the hardship basis for the granting of a variance.

■■ The purpose of a variance provision is to prevent a zoning statute from operating to deprive a property owner of all beneficial use of his property. A statute which so operated would be unconstitutionally confiscatory.[4] It makes no practical difference whether the inability to use property in accordance with zoning regulations stems from topographical conditions of the land itself or from the existence of a structure on the land.

■ We think that the statute is clear, It provides that "other extraordinary or exceptional situation or condition of a specific piece of property" may be grounds upon which a variance may be granted. The Board is in error when it takes the position that a variance may only be issued when the required hardship inheres in "land" as opposed to "property".

The Board next argues that petitioner is not entitled to a variance because the hardship it complains of (the non-utility of the structure as a seminary) is of its own creation since it built the structure with knowledge of the zoning restrictions applicable to the land. It is for this proposition, presumably, that the Board cites Tay-

lor v. District of Columbia Board of Zoning Adjustment, D.C.App., 308 A.2d 230 (1973).

One of the expressed reasons for upholding the Board's denial of a variance in *Taylor* was the court's finding that the hardship of the petitioner was "self-imposed", in that he himself, in developing a tract of land, created an elongated lot which he then claimed was unsuited for any allowable use.

■ The Board takes the position that since petitioner built the structure, it may not now be heard to complain of its existence as constituting a hardship, that any hardship is like that in *Taylor*, "self-imposed". We disagree. In *Taylor* the direct result of the petitioner's actions was the creation of the hardship complained of, and the court quite correctly deemed it to be "self-imposed". In the instant case it was not the building of the structure in 1961 which gave rise to the complained of hardship, the building was utilized for its intended purpose as a seminary for a number of years. The hardship was caused by an extraordinary drop in enrollment of seminarians, found by the Board to be "due solely to the historical circumstances of decline in religious vocations and departure from the traditional seminary concept of theological education" and "beyond the control of the seminary administration." We conclude that the Board is in error when it contends that the hardship complained of by petitioner is "self-imposed".[5]

■ The Board also contends that granting of a variance to allow operation of a nursing home would adversely alter the residential character of the neighborhood. It is well established that a variance may not be granted, even to alleviate

---

Miami, 113 So.2d 849 (Fla.App.1959), which uses the term "property" in the same context that Rathkopf uses "land". *See also* Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535, 539–540 (1972), where the word "property" is used in discussing requirements necessary for granting of a variance.

4. Anderson, *supra* at § 14.02.

5. *See also and compare* Clouser v. David, 114 U.S.App.D.C. 12, 309 F.2d 233 (1962), where a nonconforming use was created in direct violation of the zoning provisions and the cost of creating it then claimed as a hardship in a request for a variance.

a bona fide serious hardship to the owner, if the granting thereof would adversely affect the surrounding neighborhood. 2 Anderson, *supra* at § 14.40. By statute the Board may grant a variance

> provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map. [D.C.Code 1973, § 5-420(3).]

The Board, in its "Conclusions of Law", asserts that the proposed nursing home facility would "necessarily result in increased traffic over that generated" by the former use of the property. It further states that "[t]he quiet, stable, residential character of the neighborhood will be altered by a transient influence generated by the influx of commercial vehicles from establishments servicing the facilities and private vehicles of persons employed at or visiting the home."[6] Except for a finding that the proposed use will tend to increase density, none of the Board's findings of fact is addressed to the above conclusions.

■ The Board did not find that the increase in density would adversely affect the neighborhood and it does not necessarily follow from the findings that the increase in density in this case is necessarily incompatible with a residential neighborhood. It is by no means clear that increasing the population of an area, by permitting a building to be occupied by a larger number of bed patients than the number of students who previously used it, will bring about an increase in traffic of persons or commercial vehicles to or from the premises; neither does it, in and of itself, indicate a significant change in the level of noise.[7] Consequently we are at a loss to know on what basis the Board arrived at these conclusions. The Board, in its brief, does not refer us to any evidence in the record on which these conclusions could be based.[8]

The Board does not dispute petitioner's assertion, on appeal, that the proposed use "has the joinder and approval of all neighboring property owners; and [that] the owner has resolved all tentative opposition which developed to the application." (Petitioner's brief at 5.) Indeed the Board, in its order of July 13, 1973, eliminated all references which had been made in its original order to opposition to the proposed use.[9]

We have thus far concluded that the Board erred in finding that the petitioner was not entitled to a variance on the grounds that the hardship complained of did not inhere in the "land" and on the grounds that the hardship was "self-created". We have also found that the Board's Conclusion of Law No. 6 (regarding alteration of the residential character of the neighborhood by increased traffic and influx of commercial vehicles) is not supported by findings of fact and is therefore deficient. Salsbery v. District of Columbia Board of Zoning Adjustment, D.C.App., 318 A.2d 894 (1974). These errors require

6. There can be no claim that the proposed use, by its appearance will adversely affect the neighborhood, since the new use will not require exterior structural changes. The situation is therefore different from that in *Taylor, supra,* where the proposed use would have been architecturally out of character with the neighborhood.

7. We address ourselves to the question of burden of proof, *infra. Also see* note 11.

8. In its brief the Board refers to the testimony of Maurice A. Davis, president of the Brookland Neighborhood Civic Association, to the effect that the essential character of the neighborhood would be altered by the proposed use. This testimony was given at a hearing of the Board on December 8, 1971. At the November 29, 1972, hearing of the Board, however, Mr. Davis testified that his organization, pursuant to an agreement with petitioner, no longer opposed the proposed use. The reference to Mr. Davis' earlier testimony is inappropriate and provides no evidentiary support for the Board's legal conclusions.

9. The record does not show conclusively whether all opposition to the proposed use has actually been eliminated.

**296** 

reversal of the Board's denial of the petition and a remand to the Board for further action.[10]

██ We recognize, of course, that it is petitioner's burden to show that it is entitled to a variance. Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535 (1972); D.C.Code 1973, § 1–1509(b). It would therefore be proper for the Board to require petitioner to present evidence to show that its proposed use will not create traffic flow and parking problems inconsistent with an R–1–B residential neighborhood,[11] unless the matter can be resolved by stipulation. The Board must, of course, give the petitioner sufficient notice of the issues on which it seeks proof as required by D.C.Code 1973, § 1–1509(a).[12] *See also* Palace Restaurant, Inc. v. Alcoholic Beverage Control Board, D.C.App., 271 A.2d 561 (1970).

We would also suggest to the Board that it take evidence on petitioner's efforts to dispose of the property. The Board found, as a matter of fact, that "[t]he applicant has been unable to transfer the facility to other religious or educational institutions." There is no evidence or stipulation in the record to support such a finding. Petitioner proffered testimony on its efforts to dispose of the property but such evidence was thought to be unneccessary by Chairman Scrivener, based on his view that appellant's claimed hardship was not suitable for alleviation by variance, because it did not inhere in the "land". (Tr. 64–65, Board hearing December 8, 1971.)

██ A variance may only be granted "where the strict application of any regulation . . . would result in peculiar and exceptional practical difficulties . . . or exceptional and undue hardship . . . ." D.C.Code 1973, § 5–420(3); *see* Palmer v. Board of Zoning Adjustment, *supra*, 287 A.2d at 541. In this case, a necessary element of proof of such hardship is evidence showing the inability of the applicant to make a reasonable disposition of the property for a permitted use. *See* 2 Anderson, *supra* at § 14.21.

Reversed and remanded for further proceedings.

---

10. Note nature of remand in Salsbery v. District of Columbia Bd. of Zoning Adjust., *supra*.

11. In the Board's original opinion (March 28, 1973) it is stated that "[c]areful examination of the entire record does not indicate with any degree of assurance that traffic congestion, *i. e.*, parking and other vehicular ingress and egress would *not* eventually pose a threat to this residential neighborhood." (Emphasis added.) A decision cannot be made based on petitioner's failure to meet ·its burden of proof on an issue, unless petitioner is on notice that the issue will be determinative of the decision. Palace Restaurant v. Alcoholic Bev. Con. Bd., D.C.App., 271 A.2d 561 (1970).

12. A proceeding before the Board of Zoning Adjustment is a contested case and therefore subject to the requirements of D.C.Code 1973, § 1–1501 et seq. Dietrich v. District of Columbia Bd. of Zoning Adjust., D.C.App., 293 A.2d 470 (1972).