Cushing DANIEL et al., Petitioners,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

Battery Associates, Intervenor.

No. 8215.

District of Columbia Court of Appeals.

Argued July 9, 1974.

Decided Dec. 16, 1974.

Gilbert Hahn, Jr., Washington, D. C., for petitioners.

Leo N. Gorman, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Whayne S. Quin, Washington, D. C., with whom Norman Glasgow and John F. McCabe, Jr., Washigton, D. C., were on the brief, for intervenor.

Before NEBEKER, YEAGLEY and HARRIS, Associate Judges.

YEAGLEY, Associate Judge:

This is an appeal by certain property owners (petitioners)[1] for review of an or-

---

1. Petitioners, in order to invoke the jurisdiction of this court under D.C.Code 1973, § 1–1510 and § 11–722, allege that they were parties to the proceedings before the Board

adversely affected by the Board's ruling. While we have considerable difficulty in finding that the parties before the Board established that they were persons aggrieved within

der of the Board of Zoning Adjustment (Board) which upheld the issuance of building permits to Battery Associates (Battery) for the construction of 15 single family detached dwellings in an R–1–B zone, on a single record lot consisting of 192,000 square feet. Twelve more houses are to be built later. The lot abuts two roughly parallel portions of University Terrace and Chain Bridge Road in northwest Washington and has a total public street frontage thereon of only 304 feet. The building permits were issued by the zoning administrator who found that the development proposed by Battery met the requirements of § 7516 of the Zoning Regulations.

The approved plan provides for single family detached houses to be constructed along a semi-circular private access road which leads off of University Terrace and runs through the lot. The development pattern normally required by the Zoning Regulations in an R–1–B zone consists of single family detached dwellings built on individually recorded lots,[2] each with a minimum lot area of at least 5,000 square feet, a width of at least 50 feet and a minimum public street frontage of 20 feet.[3] The instant plan comports with all of those requirements except as to street frontage and a separate recorded lot for each structure. The several lots, or construction sites, are not recorded but are considered as theoretical lots within the one large recorded lot.

Petitioners (appellants below) contend that the planned development of this land as an interior lot is impermissible, being in violation of the foregoing two R–1–B Zoning Regulations. They do not contend that the planned development failed to comply with any of the requirements of § 7516 un-

der which the building permits were issued. Their argument in essence is that it was not intended that § 7516 should be interpreted to avoid the requirements of the foregoing two Zoning Regulations unless it is administered as a variance or special exception.

The relevant provisions of § 7516 are as follows:

7516.1. This Section is designed to permit two or more principal buildings or structures to be erected on a single subdivided lot.

7516.2. The number of principal buildings permitted hereunder shall not be limited, provided the applicant for a permit to build submits satisfactory evidence that all requirements of these regulations such as use, height, bulk and open spaces around each building as provided by Paragraphs 8103.2 and 8103.3 will be complied with.

7516.3. Where a principal building has no street frontage, as determined by dividing the subdivided lot into theoretical building sites for each principal building, the front of such building shall be the side upon which the principal entrance is located. Open space in front of such entrance shall be provided equivalent to the required rear yard in the district in which such building is located; but a rear yard shall be required. (Emphasis omitted.)

Petitioners contend that this section is so devoid of standards for administrative implementation that it must have been intended by the drafters to be a "variance" or a "special exception" within § 8207 [4] of the Zoning Regulations so that a public hearing and Board approval would be required

---

the meaning of D.C.Code 1973, § 5–420 and of § 8102.1 of the Zoning Regulations, we have decided not to overturn the Board's finding that the petitioners had standing before it.

2. D.C. Zoning Regulations, § 8103.3.

3. D.C. Zoning Regulations, §§ 3301.1 and 3301.6. See also D.C. Zoning Regulations, § 3101.1.

4. Section 8207 deals with the authority of the Board to grant variances and special exceptions in accordance with the Zoning Act of 1938, D.C.Code 1973, § 5–420.

for every § 7516 development. Petitioners view the lack of standards as rising to the level of a constitutional defect. The Board's interpretation of § 7516 is also attacked by petitioners on the ground that the section was never intended to apply to R–1 zoning districts.

The Board rejected petitioners' arguments and found that the Zoning Regulations provided adequate standards for the administrative application of § 7516, that the section was an alternative to the normal development pattern provided for in the Zoning Regulations which could be employed by any qualifying developer, and that § 7516 was not to be implemented as a "variance" or "special exception".

■ In reviewing such regulations we recognize that "our only task is to determine whether the Board's interpretation is plainly erroneous or inconsistent with the regulations." Taylor v. District of Columbia Board of Zoning Adjustment, D.C. App., 308 A.2d 230, 232 (1973). We find the pertinent regulations to be abundantly clear and the Board's interpretation thereof fully warranted.

I

■ We do not agree with petitioners' contention that § 7516 lacks adequate standards for its administrative implementation. Paragraph 2 thereof expressly conditions its authorization of multiple buildings on a single lot upon compliance with all of the applicable building permit requirements of §§ 8103.2 and 8103.3 of the Zoning Regulations. Consequently, the zoning administrator must determine, among other things, whether the applicant's development plan meets the use, height, bulk and open space requirements for the appropriate zoning districts. Petitioner does not contend that those require-

ments were not met by Battery in this case. The § 7516 developer essentially avoids only two criteria of the normal building permit applicant—the mandate of § 8103.3 of one record lot for each structure, and the minimum street frontage requirement of § 3301.6 which would normally be applicable to each building site. However, he incurs an additional front yard requirement under § 7516.3 for each proposed building. Consequently, the zoning administrator issues a § 7516 building permit under criteria which are substantially the same as those he employs in issuing any other building permit. Far from having an unconstitutional breadth of discretion, the zoning administrator has no discretion in this regard. Section 7516 is an elective section to be instituted at the option of the developer, and the only function of the zoning administrator is to make certain that the building permit applicant has met all of the requirements of the section under which he chose to file his application.[5]

II

■ Petitioners' argument that § 7516 constitutes a "special exception" or "variance" which cannot be obtained without the prior approval of the Board is unconvincing. That section is a development procedure expressly provided for in the Regulations. A "variance", on the other hand, is an authorization to a property owner to depart from the literal requirements of the Zoning Regulations in utilization of his property in cases in which the strict enforcement of the Zoning Regulations would cause undue hardship. D.C. Code 1973, § 5–420(3); D.C. Zoning Regulations, § 8207.11. *See* Clerics of St. Viator v. District of Columbia Board of Zoning Adjustment, D.C.App., 320 A.2d 291 (1974); Palmer v. Board of Zoning Ad-

5. We note that in the minutes of the Board meeting of November 20, 1973, the Board recommended that the Zoning Commission study possible improvements for § 7516. If the elective nature of § 7516 is not desirable from a

policy point of view, it is the legislative task of the Commission, not the responsibility of the Board or the courts, to fashion the appropriate relief.

justment, D.C.App., 287 A.2d 535 (1972). Nor is there anything in the Zoning Regulations to indicate that § 7516 is a "special exception" requiring approval of the Board. The section appears on its face to be self-executing. It deals with the prerequisites to the issuance of a building permit which is a matter administered by the zoning administrator, and it is not among the "special exceptions" listed under § 8207.2 of the Zoning Regulations. *See* 3 Anderson, American Law of Zoning § 15.-01–02 (1968).

In the words of the Zoning Advisory Council at the time that it recommended adoption of § 7516, it "is an elective regulation which will be optional with the developer . . . ." Report of the Zoning Advisory Council at 7, September 3, 1963. There is nothing to suggest that the Board is to intervene in the normal application of § 7516 or that the subsequent adoption of § 3301.6 changed the nature of its function. The same is true of § 8103.3, a fortiori, because that section explicitly provides for the independent operation of § 7516.

### III

We find nothing in the language or legislative history of § 7516 to indicate that it was not intended to apply to every zoning district in the city. While it is true that § 7516 was promulgated primarily to facilitate the development of multiple unit public housing, the Zoning Advisory Council recognized that "[t]he amendment would not be limited to public housing, since it should prove advantageous . . . occasionally to the individual lot owner who may be faced with the problem of developing excessively large interior property with only minimal street frontage." Report of the Zoning Advisory Council at 6, September 3, 1963. This is precisely the type of project which has been undertaken by Battery. Section 7516.3 clearly recognizes that some of the building sites for such interior developments may have no public street frontage and attempts to compensate for this fact by adding an extra front yard requirement.

We find unpersuasive the other arguments advanced by the petitioners. Accordingly, we conclude that there is nothing in the record before us to indicate that the interpretation of the Board was plainly erroneous, inconsistent with the Zoning Regulations or contrary to law.

Affirmed.