In the Matter of GILBERT DEVORE et al., Appellants, v HENRY CAZALET et al., Constituting the Board of Zoning Appeals of the Incorporated Village of North Hills, Respondents, and X-CELL REALTY ASSOCIATES et al., Intervenors-Respondents.

Second Department, May 14, 1979

## APPEARANCES OF COUNSEL

*Santemma, Costigan & Murphy, P. C. (George B. Costigan, Jr.,* of counsel), for appellants.

*Lapp, Schacher & Bradie (Michael Bradie* of counsel), for respondents.

*Rathkopf & Rathkopf (Arden H. Rathkopf* of counsel), for intervenors-respondents.

## OPINION OF THE COURT

Suozzi, J. P.

This is a proceeding pursuant to CPLR article 78, *inter alia,* to review a determination of the respondent Board of Zoning Appeals of the Incorporated Village of North Hills, dated February 27, 1978, which granted certain area variances to the intervenors-respondents. The petitioners appeal from a judgment of the Supreme Court, Nassau County, which, *inter alia,* dismissed the petition.

In our view, the respondent board erred, as a matter of law, in granting the intervenors' application for area variances.

The subject parcel, triangular in shape, has a frontage on the west side of New Hyde Park Road of 361.8 feet and a total area of 1.75 acres. It is bounded on the northwest by the right of way of Northern State Parkway and the southwest by a

service road and exit of the Northern State Parkway. It was purchased by intervenor Schumacher in or about 1964. At that time the property was in a two-acre residential building zone.

In September, 1970, the Incorporated Village of North Hills (hereinafter village) rezoned the subject parcel and placed it in a R-M district in which cluster residential housing, town houses and garden apartments were permitted on parcels of not less than eight acres.

In March, 1977, Schumacher applied to the village Board of of Trustees to rezone the subject property from a R-M district to a C (commercial) district. The application was granted.

The uses permitted as of right in such a commercial district are (1) office buildings for business and professional use and (2) banks and financial institutions.

In December, 1977, intervenor X-Cell, as contract vendee of the subject premises, applied to the village building inspector for a building permit to construct an office building thereon.

On December 7, 1977 the Building Inspector denied the application on seven grounds including the following: (1) the lot contained only 1.75 acres instead of 5 acres; (2) the plans showed a four-story building instead of a two-story building; and (3) the plans showed 193 off-street parking spaces, each 9 by 20 feet, while for the proposed four-story building and its planned 38,480 square feet of gross floor area (30,784 square feet of net floor area), 205 off-street parking spaces, each 10 by 20 feet in size were required.

On December 9, 1977, X-Cell and Schumacher (the latter is a member of the village Board of Trustees) applied to the board for the following variances:

1. Height variance—four stories instead of two permitted by the Building Zone Ordinance.

2. Off-street parking variance—193 spaces in lieu of 205 spaces.

3. Variance providing for one loading berth instead of four.

4. Variance permitting parking or loading facilities to be located inside landscaped areas.

5. Variance permitting the diminution of parking spaces to a typical parking space width of 9 feet as opposed to a width of 10 feet as required by the village ordinance.

6. Variance permitting development in a commercial district on less than five acres, namely, 1.75 acres.

7. Variance permitting landscaping 4 feet in depth at the east side of the lot line and 3 feet in depth on the north and south lot lines instead of the 15 feet required by the village's regulations for commercial districts.

A hearing was held on the application. The petitioners, who are individual unit owners and the board of managers of a condominium which is located on the east side of New Hyde Park Road directly opposite the subject parcel, appeared and objected to the proposed variances.

The Board of Zoning Appeals granted the requested variances subject to approval of the proposed site plan by the village Planning Board. Special Term affirmed the board's determination.

In granting the intervenors' application, the board characterized the requested variances as "all area variances". Clearly, the crucial variance sought by the intervenors was for the erection of a four-story building as opposed to the two-story requirement of the zoning ordinance.

In granting this variance, the board, in its findings of fact, found that "the practical difficulties encountered by the applicant are produced by the size, shape and topography of the parcel and cannot be obviated by any feasible method other than the variances herein applied for" and in its "Conclusions and Decisions" found that "[i]t was uncontroverted at the hearing that it would be economically impractical to erect a 2 story building within the limitations of the Ordinance".

By this language the board was apparently attempting to satisfy the requirements for the granting of an area variance, i.e., a showing of "practical difficulties or unnecessary hardship" (see *Matter of Village of Bronxville v Francis,* 1 AD2d 236, 238, affd 1 NY2d 839; *Conley v Town of Brookhaven Zoning Bd. of Appeals,* 40 NY2d 309; *Matter of National Merritt v Weist,* 41 NY2d 438; *Matter of Cowan v Kern,* 41 NY2d 591). However, an examination of the minutes of the hearing before the board reveals a complete failure of proof by the intervenors with regard to either practical difficulties or unnecessary hardship in building a two-story commercial building with the requisite parking spaces in accordance with the village zoning ordinance.

At the hearing, the architect who testified for the intervenors failed to submit any competent proof, by financial data or expert testimony, that a two-story building built in accordance with the zoning ordinance would present a practical or eco-

nomic hardship. The architect in his testimony merely gave an aesthetic justification for the proposed variation from the two-story ordinance. The architect testified: "However, if we were to go to two stories as per your zoning, I think we would be criticized by the community. We would be criticized by the Town Board, by the Board of Zoning Appeals for not leaving open space and green area and trying to create a mass, a huge block 20 percent of the total coverage of this site which is enormous."

These aesthetic considerations, while worthy, are insufficient to satisfy the intervenors' burden of demonstrating the need for an area variance. Apart from a self-serving conclusory statement by the intervenors' attorney as to the need for a variance, the architect's testimony constituted the sum total of the intervenors' testimony.

The complete failure of the intervenors' case can be further corroborated from their own figures. The plans for the four-story building proposed by the intervenors call for a gross floor area of 38,480 square feet and a net floor area of 30,784 square feet. Under the village zoning ordinance, net commercial space is defined as "[t]he space in a given commercial building used for the principal use to which the building is put (e.g. offices in an office building, selling space in a department store), excluding areas used for storage, utilities, and other accessory functions" (Village of North Hills Building Zone Ordinance, art III, § 3.1, subd B, par 45). Although it is unclear from the record how the intervenors arrived at the figure of 30,784 square feet for "net commercial space", we have accepted their figure, which is 20% less than their gross commercial area, for the purposes of this appeal. The building zone ordinance calls for 20% coverage, i.e., "[t]hat percentage of the plot or lot area covered by the building area" (art III, § 3.1, subd B, par 19). Since the intervenors were, in our view, entitled to a variance from the five-acre requirement to the 1.75 acres, the 20% coverage requirement would allow a two-story building under the ordinance with each story containing a maximum of 15,400 square feet, for a total of 30,800 square feet (using a measurement of approximately 44,000 square feet per acre, one and three-quarter acres equals approximately 77,000 square feet. Twenty percent coverage would allow each story to contain 15,400 square feet of space). If we accept the intervenors' breakdown or ratio between net commercial space and gross commercial space, the amount of net

commercial space in a building conforming to the maximum requirements of the zoning ordinance would be 24,640 square feet. Since the zoning ordinance calls for one parking space for every 150 square feet of net floor area, a building conforming to the zoning ordinance would only require 164 parking spaces. Yet, the intervenors failed to show either that a two-story building with 164 parking spaces would be practically difficult or by "dollars and cents" proof that it would constitute a significant economic hardship (see *Matter of Crossroads Recreation v Broz*, 4 NY2d 39, 44; *Matter of Cowan v Kern*, 41 NY2d 591, *supra).*

Accordingly, the judgment of Special Term must be reversed, the determination of the board granting several variances must be annulled and the application must be denied, except that the variance permitting development on 1.75 acres rather than 5 acres should be granted.

The determination of the board must be annulled for the additional reason that under the guise of seeking several area variances the property owner has succeeded in obtaining an unauthorized 25% increase of permissible building space from 30,800 to 38,480 square feet and has thereby effectively expanded the permissible use of the building. In achieving this increase of building area by this area variance route the property was granted the additional benefit of a relaxation of the parking requirements, not only as to size but as to number of spaces, necessitated by the increased building area. Such a change does not qualify as the classic area variance which zoning boards of appeals are empowered to grant. Quite to the contrary, it is more akin to either a use variance for which insufficient proof was adduced, or a rezoning which boards of zoning appeals are not empowered to grant.

■ With respect to the issue of standing which was raised by the respondents, Special Term, citing *Matter of Douglaston Civic Assn. v Galvin* (36 NY2d 1) and *Matter of Dairylea Coop. v Walkley* (38 NY2d 6) properly rejected that argument and noted that there has been an "enlargement in recent years of the right to challenge administrative action". Indeed, it is only through the enlargement of the concept of standing enunciated by the Court of Appeals in *Douglaston* and *Dairylea (supra)* that illegal or improper determinations of zoning boards of appeals of which the instant matter is a classic example, have been effectively monitored and successfully thwarted.

LAZER and GULOTTA, JJ., concur; SHAPIRO and COHALAN, JJ., dissent and vote to affirm the judgment on the opinion of RONCALLO, J., at Special Term.

Judgment of the Supreme Court, Nassau County, dated August 28, 1978, reversed, on the law, without costs or disbursements, petition granted, determination annulled and application for area variances denied except that the variance permitting development on 1.75 acres rather than 5 acres is granted.