**ROSE LEES HARDY HOME AND SCHOOL ASSOCIATION and Francis Scott Key School Parent and Teachers Association, Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

St. Patrick's Episcopal Day School and the Florence Crittenton Home of Washington, D. C., Intervenors.

**Edward S. COHEN and Felice D. Cohen, Petitioners,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

St. Patrick's Episcopal Day School and the Florence Crittenton Home of Washington, D. C., Intervenors.

**Nos. 7807, 7817.**

District of Columbia Court of Appeals.

Argued March 11, 1974.

Decided Aug. 20, 1974.

702

John W. Vardaman, Jr., Washington, D. C., for petitioners in No. 7807.

B. Michael Rauh, Washington, D. C., with whom Martin Shulman, Washington, D. C., was on the reply brief, for petitioners, in No. 7817.

Earl A. Gershenow, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis

Murphy, Corp. Counsel, and Louis P. Robbins and Richard W. Barton, Asst. Corp. Counsels, Washington, D. C., were on the brief, for respondent.

Whayne S. Quin, Washington, D. C., with whom Norman M. Glasgow and John F. McCabe, Jr., Washington, D. C., were on the brief, for intervenors.

Before FICKLING, NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

These petitions, one brought by parent and teachers associations of two public elementary schools and the other by adjacent property owners, seek review of an order of the District of Columbia Board of Zoning Adjustment (BZA) which conditionally granted a special exception to allow construction of a private school in a residential (zoned R–1–B) area. Petitioners challenge the BZA's action claiming, *inter alia*, procedural error by the BZA in not implementing its preliminary decision to seek "comments" from the Board of Education respecting the possible adverse impact of the proposed private school on the two public schools in the same general area, and error by ignoring that impact issue.[1] We remand with instructions to the BZA to proceed in accordance with this opinion.

On January 30, 1973, an application was filed by the Florence Crittenton Home on behalf of St. Patrick's Episcopal Day School (St. Patrick's Day School) requesting a special exception to the existing zone plan to allow construction of a private school for kindergarten and elementary school-age children.[2]

On April 18, 1973, the BZA held a hearing on the application and the following

was established. St. Patrick's Day School, sponsored by St. Patrick's Episcopal Church, has been in existence since 1956. It presently consists of a nursery school located in the church within the District of Columbia, and a kindergarten and an elementary school located in another church in Montgomery County, Maryland. Because of a desire to centralize operations, and because a high percentage (approximately 84%) of the students attending the Maryland school are from the District of Columbia, St. Patrick's Day School has made several attempts to relocate in the District. This application represents the latest of those efforts. The proposed school when completed is expected to have an increased capacity to allow the student body to grow from the present 158 to approximately 280 students. This anticipated increase is based on the interest presently expressed by neighboring families. Sixty percent or more of the present enrollment reside within a ten-block radius of the proposed site.

At the hearing, Mr. and Mrs. Cohen, adjacent property owners, objected to the application, primarily on the ground that another school in an area already having two public and two private elementary schools might have an adverse impact upon the ability of one or both of the public schools to remain open. Further, a letter from then-School Board Member Albert Rosenfield (apparently solicited by the Cohens) was presented requesting a postponement of the hearing for 30 days so that a study might be made by the Board of Education to determine what impact the proposed school would have on the neighboring public schools. Objection to such a postponement was voiced by the applicant, which argued that the letter was irrelevant, that the Cohens had known about the applica-

1. Petitioners raise other issues for our review. However, due to the disposition on the procedural issue, we do not treat the other issues.

2. We note that a religious organization is the sponsor of the private school and testimony at the hearing revealed that one of the objectives of the proposed educational institution would be regular religious instruction. The regulatory scheme, however, does not make a differentiation between private and parochial schools. *See* Zoning Regulations of the District of Columbia, § 3101.41.

tion for some time, and that no referral to the Board of Education is required by statute or regulation. *Compare* Zoning Regulations of the District of Columbia, § 3105.42. It also was argued that a substantial increase in construction costs would result if the hearing were delayed. The BZA allowed the Rosenfield letter to be included in the record but reserved ruling on the request for postponement. While the Cohens and the president of the Key School Parent and Teachers Association did testify, they were precluded from presenting any opinions on the impact issue.

A few days later, on April 24, 1973, at an executive session, the BZA voted 3–2 to hold the record

> open for 30 days to hear from the Board of Education regarding impact on the Public Schools, and a letter stating such should be sent to applicant and parties.

> The letter should indicate that the Board is asking for comments from the Board of Education. [Supp. Record II at 16.]

Even though such a resolution was adopted, it does not appear that the Board of Education formally was asked to submit comments. Further, the parties to the BZA proceeding were never notified of the resolution.

Concurrent with his letter to the BZA requesting the 30-day postponement, Mr. Rosenfield also wrote to the Board of Education respecting the proposed construction. In response, the Superintendent of Schools wrote a letter, dated May 1, 1973, to Mr. Rosenfield stating that his (Rosenfield's) initial letter to the Board of Education had been referred to the Deputy Superintendent of Management Services who, with another staff member, had met with an official of St. Patrick's Day School. As a result of that meeting, the Superintendent's letter indicated "that there should be no D. C. School involvement in this matter, since there appeared to be no immediate impact on the Hardy and Key Elementary Schools", nor was there any fear of an adverse effect on the respective schools' enrollments. Upon receipt of the May 1, 1973, letter, Mr. Rosenfield forwarded it to the BZA and formally withdrew his request for postponement.

In an executive session on May 22, 1973, the BZA, voting upon the proposed minutes of the April 24, 1973, session, amended those minutes by striking the language about inviting comments from the Board of Education. At the June 20, 1973, executive meeting, at which four of the five members were present, the BZA voted to conditionally grant the application. Later that day the absent member, who apparently had not been notified of the meeting, cast the dissenting vote. Approximately one month later, the BZA issued its Findings of Fact and Opinion which contained, *inter alia,* the following:

FINDINGS OF FACT:

15. . . . At the instigation of the property owner, a request dated April 17, one day before the hearing, from one member of the Board of Education was received requesting a delay of our hearing until the Board of Education could review the application.

17. By letter dated May 2, 1973, Mr. Albert A. Rosenfield withdrew his request for delay of the Board's decision in view of a letter-determination from the Superintendent of Schools dated May 1, 197[3], which letter is also contained in the record. The School Board, through its representatives, "reached the conclusion that there should be no D. C. School involvement in this matter. . . ." However, there is no requirement in the Zoning Regulations that the Board rely in any manner on the Board of Education in this type of case.

OPINION:

. . . We do not believe that the establishment of the school in any way

will adversely affect surrounding or neighboring properties by virtue of the careful site lay-out, topography and building design. . . . [A]nd more specifically we do not believe that the school use will have any adverse effect upon lot 810 [the Cohens' property]. . . .

Prior to making a final determination on the requests for delay, the Board received a letter withdrawing the request for such delay from Mr. Albert Rosenfield, with an attached letter from the Superintendent of Schools. We believe that these make the requests for delay of the decision moot. Moreover, it is our belief that the requests would be beyond the scope of our intended inquiry under the Zoning Regulations. . . . Additionally, we note that the Zoning Regulations do not permit the Board of Zoning Adjustment to go beyond its delegated function in special exception cases. Moreover, private schools are permitted in residential zones along with public schools.

The property in question is located in an R–1–B District (high density, one-family detached dwellings). Such a district, as described in Zoning Regulation § 3101.1, is intended to protect quiet residential areas. The regulations pertaining to R–1 Districts "are designed to stabilize such areas and to promote a suitable environment for family life." With those objectives in mind a few additional uses are permitted in an R–1 District. Most notably, they include public schools as a matter of right, and private schools by special exceptions granted by

the BZA subject to certain conditions. First, a general condition is that the BZA, pursuant to Zoning Regulation § 8207.2, may grant a special exception when in its judgment the exception will be "in harmony with the general purpose and intent of the zoning regulations and maps and will not tend to affect adversely the use of neighboring property in accordance with said zoning regulations and maps".[3] Second, an applicant must satisfy specific conditions relating to private schools. Those conditions are contained in Zoning Regulations §§ 3101.41 and 3101.42.

3101.41 A private school in the form of a kindergarten or serving a pre-school group [may be permitted] provided, that:

(a) It will have no articles of commerce for sale;

(b) It is so located and the activities to be conducted therein will be such that it is not likely to become objectionable to adjoining and nearby property because of noise, traffic, number of students, or other objectionable conditions;

(c) The use will be reasonably necessary or convenient to the neighborhood which it is proposed to serve. The enrollment at such school will be limited primarily to children residing in that neighborhood; and,

(d) There shall be provided on the same *lot* with such use not less than 100 square feet of play area for each child. [Emphasis in original.]

3. D.C.Code 1973, § 5–414 (Purposes of zoning regulations) provides:

Such regulations shall be made in accordance with a comprehensive plan and designed to lessen congestion in the street, to secure safety from fire, panic, and other dangers, to promote health and the general welfare, to provide adequate light and air, to prevent the undue concentration of population and the overcrowding of land, and to promote such distribution of population and of the uses of land as would tend to create conditions favorable to health, safety, transportation, prosperity, protection of property, civic activity, and recreational, educational, and cultural opportunities, and as would tend to further economy and efficiency in the supply of public services. Such regulations shall be made with reasonable consideration, among other things, of the character of the respective districts and their suitability for the uses provided in the regulations, and with a view to encouraging stability of districts and of land values therein.

3101.42 [Relating to other private schools, that is, above the kindergarten level, sanctions approval of such a school] provided that:

(a) It is so located that it is not likely to become objectionable to adjoining and nearby property because of noise, traffic, number of students, or otherwise objectionable conditions;

(b) Ample *parking space,* but not less than that required in Article 72 of these regulations, is provided to accommodate the students, teachers, and visitors likely to come to the site by automobile. . . . [Emphasis in original.]

The BZA concluded that the applicant had satisfied the regulatory conditions and therefore granted the special exception. Petitioners challenge that conclusion, contending that the BZA was obligated to consider the effect that the new private school might have upon existing public schools. The BZA, without having earlier addressed the point, contends that it would have been impermissible for it to have considered such arguments (necessarily speculative) because of First Amendment protected rights. Such an argument does to the very heart of the regulatory scheme, because public schools and private schools are treated differently by the regulations.[4] Other courts have entertained this type of constitutional challenge and have reached varying interpretations.[5] We need not reach that question on this appeal.

▇ The BZA, a creature of statute with discretionary and fact-finding authority, may not exercise its discretion in an arbitrary manner but rather is subject to statutory and regulatory directives and guidelines. *See* Stewart v. District of Columbia Board of Zoning Adjustment, D.C. App., 305 A.2d 516, 518 (1973); O'Boyle v. Coe, 155 F.Supp. 581 (D.D.C.1957); 8A McQuillin, Municipal Corporations, §§ 25.-230 and 25.232 (3d ed. rev. 1965). The BZA may exercise its discretion to grant a special exception only when in its judgment the exception sought is in accord with the purpose of the Zoning Regulations. That "purpose", as reiterated in Dietrich v. District of Columbia Board of Zoning Adjustment, D.C.App., 293 A.2d 470, 471 n. 3 (1972), is statutory and includes, *inter alia,* (1) "[creation of] conditions favorable to . . . educational . . . opportunities"; and (2) "further[ing] economy and efficiency in the supply of public services." *See* D. C. Code 1973, § 5–414.

The BZA first determined to solicit comments from the Board of Education, and then decided not to. In the meantime, as noted, the Superintendent of Schools concluded that the new school would not "adversely affect the enrollments at either Hardy or Key Elementary Schools."[6] That letter, which obviously was relied upon by the BZA, was not served upon the parties.

It is not for us to decide which of the two successive decisions made by the BZA on the impact question was wiser, *i.e.,* whether or not to solicit formal comments from the Board of Education. The scope of our review is considerably more narrow. Our concern focuses on the fact that after the BZA made the initial decision to seek the Board's views, its conduct fell short of the procedures required by the District of

---

4. As noted, public schools may be placed in R–1 Districts as a matter of right, but a special exception is required for a private school.

5. St. John's Roman Catholic Church v. Town of Darien, 149 Conn. 712, 184 A.2d 42 (Sup. Ct.Err.1962); Roman Catholic Diocese v. Borough of Ho-Ho-Kus, 42 N.J. 556, 202 A. 2d 161 (1964); State ex rel. Wisconsin Lutheran High School Conference v. Sinar, 267 Wis. 91, 65 N.W.2d 43 (Sup.Ct.1954).

6. In his letter to Mr. Rosenfield dated May 1, 1973, the Superintendent also observed: "The St. Patrick's Day School has been in existence for several years and has provided a number of scholarships to students from the Southeast area of the city." [R. 146.]

Columbia Administrative Procedure Act, D.C. Code 1973, § 1–1501 et seq.

■ The application resulted in a "contested case". *See* Clerics of Saint Viator, Inc. v. District of Columbia Board of Zoning Adjustment, D.C.App., 320 A.2d 291, 296 n. 12 (1974). Section 1–1509 of the Code provides for certain fundamental principles of due process such as notice, the right to present and rebut evidence, to cross-examine, and particularly, where a decision "rests on official notice of a material fact not appearing in the evidence in the record, any party . . . shall . . . be afforded an opportunity to show the contrary."

■■ At the hearing on the application on April 18, the BZA entertained a motion for postponement to permit comments by the Board of Education. The BZA delayed disposition on that motion until a subsequent executive session on. April 24. At that session the BZA voted to hold the record open so that impact information could formally be sought. Instead of implementing that decision, the BZA failed to notify the parties or take any other action. Ultimately, acting upon information contained in a letter dated May 2 from the Superintendent of Schools to a member of the Board of Education, on May 22, the BZA sua sponte struck its decision to hold the record open. When the Findings of Fact and Opinion were issued, the BZA not only made reference to the information contained in the Superintendent's letter but also indicated that it placed at least some reliance thereon.[7]

In its Opinion, the BZA expressed the conclusion that seeking formal comments from the Board of Education "would be beyond the scope of our intended inquiry under the Zoning Regulations." [R. 155.] That may be wholly valid; §§ 3101.41 and 3101.42 of the Zoning Regulations do speak in terms of protecting adjoining and nearby *property* from objectionable consequences.[8] Nonetheless, the procedural infirmities presented by this record so taint the result that it may not stand.[9] Accordingly, the decision of the Board is vacated and the case is remanded to the BZA with instructions to reopen its proceedings at a point immediately prior to the commission of error. That is, the BZA should permit all parties to be heard on the record as to whether formal comments should be solicited from the Board of Education. When that question has been resolved, the matter may be processed to final disposition in accordance with the requirements of the District of Columbia Administrative Procedure Act.

Reversed and remanded.

7. In Citizens Ass'n of Georgetown v. District of Columbia A.B.C. Bd., D.C.App., 288 A.2d 666, 669 (1972), this court stated:
   It is "a fundamental principle of all adjudication, judicial and administrative alike, that the mind of the decider should not be swayed by materials which are not communicated to both parties and which they are not given an opportunity to controvert."
   . . . .
   *Cf.* Robey v. Schwab, 113 U.S.App.D.C. 241, 307 F.2d 198 (1962).

8. It is difficult to visualize the BZA analyzing School Board policies, teacher competence, and various related subjective factors which could enter into a parental decision to place a child in a parochial or private school rather than a public school.

9. We note that on July 24, 1973, petitioner Edward Cohen addressed an *ex parte* letter on the merits of the controversy to the dissenting BZA member. Instead of sending an *ex parte* reply to Mr. Cohen, as she did on August 15, the member should have placed Mr. Cohen's improper submission in the public record and had copies thereof served on the other parties, notwithstanding the fact that the record technically was closed and the case had been decided. Experience demonstrates that the best way to prevent improper *ex parte* representations is to expose them to full view.