**Maureen DWYER, Petitioner,**

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent.**

No. 7642.

District of Columbia Court of Appeals.

Argued Feb. 21, 1974.

Decided May 24, 1974.

Rehearing and Rehearing en Banc Denied July 3, 1974.

1. D.C.Code 1973, § 11–772.

2. The building is located in an R-5-B district which, by Section 3105 of the Zoning Regulations of the District of Columbia, is classified

Robert B. Fitzpatrick, Washington, D. C., for petitioner.

James N. Dulcan, Asst. Corp. Counsel, Washington, D. C., with whom C. Francis Murphy, Corp. Counsel, and Richard W. Barton, Asst. Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Before REILLY, Chief Judge, and KELLY and PAIR, Associate Judges.

PAIR, Associate Judge:

The District of Columbia Board of Zoning Adjustment (the Board) denied an application for a variance to permit the use of property in a residential area for general office purposes and this court is petitioned[1] to review the record of the proceedings.

The petition for review poses the question whether as a matter of law exceptional or undue hardship was established within the meaning of those terms as used in D.C.Code 1973, § 5–420(3).

The operative facts are not in dispute. Sometime in September 1972 two lawyers purchased the three-story building at 2019 R Street, N.W.[2] and commenced the use of the building for their own and other law offices. Shortly thereafter one of the owners of the building was advised by the Chief of the Zoning Inspection Branch that the use of the building for office purposes was in violation of the Zoning Regulations which provide:

Section 8104—Certificate of Occupancy. 8104.1 . . . [N]o person shall use

as residential. Certain other uses, not here pertinent, are permitted if approved by the Board, subject to the provisions of Section 8207. General office use is not permitted as of right or by special exception.

any *structure* . . . or part thereof for any purpose other than a *one-family dwelling* until a certificate of occupancy has been issued to such person stating that such use complies with these regulations and the building code.

Representing that extreme hardship would result if the owners were required to use the property for its zoned purpose, application was made to the Board for a variance. The Board's authority to grant a variance is controlled by D.C.Code 1973, § 5–420 (Zoning Regulations, Section 8207.-11), which provides in pertinent part:

The Board of Adjustment shall not have the power to amend any regulation or map.

. . . . . .

Upon appeals the Board . . . shall have the following powers:

. . . . . .

(3) Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, *provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, pur-*

*pose, and integrity of the zone plan as embodied in the zoning regulations and map.* [Emphasis added.]

Pursuant to Section 8203 of the Zoning Regulations, the Board conducted, on January 17, 1973, a hearing at which it was uncontroverted that the building was constructed in 1916 as a single-family residence and was used for that purpose until sometime in 1928 when it was converted for the additional use as offices of a dentist who resided on the premises.[3] It appears that the dual use of the building continued until 1942 when the dentist died, after which his son—a physician—maintained offices in the building for the practice of medicine.

In 1963 the Board granted, pursuant to D.C.Code 1973, § 5–420(2), a special exception to permit the use of the building as a school.[4] However, the building was never used for that purpose. The following year the Board granted a special exception to permit, as provided in Zoning Regulations, Section 3101.410, the use of the building as an office annex to the Chancery of the Embassy of New Zealand. The use of the building for the latter purpose continued until 1972 when the property was purchased by its present owners.

In addition, there was evidence in the form of testimony, statements and affidavits, both in support of and in opposition to the application. There was also evidence purporting to establish hardship—specifically that the building, because of its size and interior arrangement, could not be rented as a single-family residence and that the cost to the owners of converting the building to multi-family use would be prohibitively expensive.

▇ At the conclusion of the hearing the Board ruled, *inter alia,* that petitioner had not established hardship within the

---

3. By Section 3101.52 of the Zoning Regulations, such an assessory use of property in an "R" district is permitted as of right.

4. Upon appeal the Board has power to hear and decide requests for special exceptions, map

interpretations, or decisions upon other special questions which such Board is required or authorized by the regulations to pass. Zoning Regulations, Section 3101.42(a).

purview of D.C.Code 1973, § 5–420(3). We agree.

"Hardship, if any, has not resulted from the location, situation, or condition of the property, but solely from appellee's appropriation of it for commercial purposes without first having obtained the necessary change in zoning. *To countenance such a procedure and standard for the procurement of a variance is to encourage the destruction of planned zoning in the District of Columbia.*" [Clouser v. David, 114 U.S.App.D.C. 12, 13, 309 F.2d 233, 234 (1962); emphasis added.] [5]

*See also* Taylor v. District of Columbia Bd. of Zoning Adjust., D.C.App., 308 A.2d 230 (1973).

Moreover, as we held in Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535, 542 (1972):

A use variance cannot be granted unless a situation arises where reasonable use cannot be made of the property in a manner consistent with the Zoning regulations. An inability to put property to a more profitable use [petitioner's major contention in the case at bar] or loss of economic advantage is not sufficient to constitute hardship. . . . [Footnotes omitted.]

█ Thus, it seems too clear for further discussion that there was a rational basis for the Board's conclusion that petitioner failed to make the required showing of hardship to warrant a variance.

Petitioner contends that the Board erroneously considered a report which she was not afforded an opportunity to examine. In this connection, all that appears from the record is the following colloquy between the Chairman of the Board and one of the owners of the property:

CHAIRMAN SCRIVENER: I understand Mr. Fahey has made a report of it to the Board. Do you have the original C. of O.?

MR. DWYER: No, I have not.

CHAIRMAN SCRIVENER: But you do have the original order of the Board?

MR. DWYER: Yes.

CHAIRMAN SCRIVENER: You do not have the certificate of occupancy?

MR. DWYER: No.

CHAIRMAN SCRIVENER: Is he required to have a certificate of occupancy?

MR. FAHEY: Yes.

CHAIRMAN SCRIVENER: Even before 1964?

MR. FAHEY: Yes.

From this colloquy, when read in context, we are satisfied that the report referred to was concerned only with the use of the building by the owners for law offices without the certificate of occupancy required by the Zoning Regulations. No doubt, it was for this reason that neither the petitioner nor the owners asked to see the report. Since there was no pretense that the owners of the property possessed or had even applied for a certificate of occupancy, the error—if any—was harmless.

From all of the foregoing, it must follow that the Board's decision and order are

Affirmed.

REILLY, Chief Judge (concurring):

In rejecting petitioners' application for a zoning variance which would enable them to continue to use their building at 2019 R Street, N.W., for law offices, the Board was dealing with a piece of property which has not been occupied solely for residential purposes for a period of more than 45 years; one owner opening a dentist's office

---

5. We recognize, of course, that Clouser v. David, *supra,* constitutes the case law of the District of Columbia which we are required

to follow. M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (1971).

there in 1928; his successor using it for the practice of medicine; and a third converting it into the chancery annex of a foreign government. The building in question is situated in a city block where there are several parcels devoted to nonconforming uses. While the Board finds support in the Zoning Regulations for distinguishing between law offices and medical offices, I find this distinction lacking in any rational support. In view of the restraints imposed by our own rules of decision[1] upon particular divisions of this court, however, I agree that the disposition of this case is controlled by Clouser v. David, 114 U.S.App.D.C. 12, 309 F.2d 233 (1962).

1. M.A.P. v. Ryan, D.C.App., 285 A.2d 310 (1971).