**A. L. W., INC., Petitioner,**

**v.**

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT,**
Respondent,

**Rock Creek East Neighborhood League, Intervenor.**

**No. 8010.**

District of Columbia Court of Appeals.

Argued Sept. 23, 1974.

Decided May 30, 1975.

Arthur L. Willcher, Washington, D. C., for petitioner.

James N. Dulcan, Asst. Corp. Counsel, with whom C. Francis Murphy, Corp. Counsel, Louis P. Robbins, Principal Asst. Corp. Counsel, and Richard W. Barton,

Asst. Corp. Counsel, were on the brief, for respondent.

Peter Weisman, Washington, D. C., entered an appearance for intervenor.

Before REILLY, Chief Judge, and GALLAGHER and YEAGLEY, Associate Judges.

REILLY, Chief Judge:

This is an appeal from an order of the District of Columbia Board of Zoning Adjustment denying an area variance sought by petitioner pursuant to D.C.Code 1973, § 5–420(3). The Board in its findings of fact and conclusions of law refused to accept petitioner's application holding no hardship sufficient to merit a variance had been shown, that any hardship to petitioner was self-imposed, and additionally, that the grant of the variance would substantially impair the intent, purpose and integrity of the zoning laws and plans.

Petitioner corporation, a local development company, is a contingent contract purchaser [1] of unimproved property located in the 1700 block of Upshur Street. Under the Zoning Regulations,[2] the property is classified for use as an R–1–B single family dwelling. To conform to the applicable specifications, lots must have a minimum of 5000 square feet and a frontage width of 50 feet. There is an additional requirement of an eight-foot side yard appurtenant to a structure erected on any such property. It is uncontested that the property in controversy has 4,036 square feet and is 25 feet wide. Petitioner's proposed dwelling would make allowance for the necessary eight-foot side yard.

Petitioner applied to the Board for a hardship variance under the applicable provisions of the statute.[3] At the hearing, witnesses representing both a neighborhood civic association and an owner of adjacent property appeared to oppose the grant of a variance. These intervenors argued that if petitioner were permitted to build, he would reap a windfall profit at the expense of others [4] owning property in the area and also that the proposed structure would block off necessary light and ventilation from neighbors. After the hearings were completed, the Board issued its findings of fact and conclusions of law together with an order denying the application.[5] Upon

---

1. The contingency is the grant of the variance sought herein. The standing of petitioner before the Board was not raised in the administrative proceeding, and consequently we do not hold petitioner lacks standing here.

2. Zoning Regulations of the District of Columbia, Art. 33, §§ 3301.1, 3305.1 (1973 Reprint).

3. D.C.Code 1973, § 5–420(3).

4. The property appears to have been purchased at a tax sale for the sum of $191.64. At the hearing the precise state of the current title was not made clear but it is uncontested that petitioner is a contingent contract purchaser.

5. The findings and conclusions of the Board:
   *Findings of Fact:*
   1. The subject lot is unimproved. The lot is 4,036 square feet and 25 feet wide by 161 feet deep.
   2. Applicant intends to erect a single family semi-detached dwelling with 3 bedrooms, 2½ baths and basement. The house will be built on one lot line (west) leaving an 8 foot side yard on the east.
   3. In an R–1–B zone, the lot area required is 5,000 square feet and a minimum width of 50 feet. Applicant alleges that this lot cannot be improved because of the unique dimensions of the lot.
   4. The subject lot has been the subject of previous appeals before the Board, all of which were denied.
   5. Opposition at the public hearing centered around the dimensions of the lot. They feel that the lot is too small to be built upon and should be left unimproved. The abutting property owner at 1727 Upshur felt that if applicant were allowed to build on this lot it would infringe upon his light and ventilation.
   6. The property was purchased at a tax sale.
   7. The hardship alleged by the applicant was self-imposed. The applicant, a developer had knowledge of the exceptional narrowness of the property at the time the property was purchased.

review, we find them insufficient and remand the case to the Board for further consideration.

Both the Board's conclusions and findings fail to meet the requirement of the District of Columbia Administrative Procedure Act, which states, *inter alia*:

> The findings of fact shall consist of a concise statement of the conclusions upon each contested issue of fact. Findings of fact and conclusions of law shall be supported by and in accordance with the reliable, probative, and substantial evidence. . . . D.C.Code 1973, § 1–1509(e).

This section of the Act has been the subject of several recent decisions of this court. *See* Shay v. Board of Zoning Adjustment, D.C.App., 334 A.2d 175 (1975); Salsbery v. Board of Zoning Adjustment, D.C.App., 318 A.2d 894 (1974); Dietrich v. Board of Zoning Adjustment, D.C.App., 293 A.2d 470 (1972); and Palmer v. Board of Zoning Adjustment, D.C.App., 287 A.2d 535 (1972). In each of these cases, this court recognized one of the fundamentals of administrative agency adjudication, *viz.*, the facts adduced and found must flow rationally from the evidence presented and in turn the conclusions of law must reasonably and rationally be drawn from such findings.

■ Accordingly, no administrative body fulfills its quasi-judicial responsibility by merely repeating the applicable statutory language in making its conclusions. Nor does a summary of the testimony and contentions constitute findings of fact in the absence of a statement revealing which factual contentions the Board accepts.

*Conclusions of Law:*

The Board concludes that applicant has not proved a hardship within the meaning of the variance clause of the Zoning Regulations. The Board cannot grant a variance where there is no evidence of exceptional situation and undue hardship unique to the owner. Applicant was aware at the time of purchase, that this was a substandard lot.

■ In this case the Board's decision is deficient in both these respects. Except for one terse sentence (dealing with the alleged self-imposition of the hardship), the Board's reason for denying the requested relief merely quotes the pertinent standards in the subsection of the code, without explaining how the proposed variance would violate such standards. In a recent case, Chief Judge Hood observed in reviewing a Board order that it was insufficient because "the opinion merely echoes in large part the statutory language authorizing the grant of a variance." Palmer v. Board of Zoning Adjustment, *supra* at 538. In Dietrich v. Board of Zoning Adjustment, *supra*, this court remanded the case to the Board on the grounds deemed controlling in *Palmer*. Judge Fickling pointed out that

> [G]eneralized, conclusory, or incomplete findings are not sufficient. The findings must support the end result in a discernible manner, and the result reached must be supported by subsidiary findings of basic facts on all material issues. In short, as we have said before, there must be findings on each material fact *with full reasons given to support each finding*. [*Id.* at 473. (Citations omitted; emphasis supplied).]

Moreover, the Zoning Regulations (§ 8202.64) require the Board to give "the full reasons for its decisions."

We turn next to the Board's one-sentence conclusion to the effect that any hardship suffered by petitioner was self-imposed. Although this might be more fully explained on remand, the Board was apparently of the belief that petitioner or the present owner knew or should have

Further, we feel that the requested relief cannot be granted without substantial detriment to the public good and without substantially impairing the intent, purpose and integrity of the zone plan as embodied in the Zoning Regulations and Map.

*Ordered:*

That this application be DENIED.

known of the area restrictions before entering into a contract for the purchase of substandard property. But "undue hardship" is only one of the factors upon which the Board is empowered to rely in granting a variance. D.C.Code 1973, § 5–420(3) states:

Where, by reason of exceptional narrowness, shallowness, or shape of a specific piece of property at the time of the original adoption of the regulations or by reason of exceptional topographical conditions or other extraordinary or exceptional situation or condition of a specific piece of property, the strict application of any regulation adopted under sections 5–413 to 5–428 would result in peculiar and exceptional practical difficulties to or exceptional and undue hardship upon the owner of such property, to authorize, upon an appeal relating to such property, a variance from such strict application so as to relieve such difficulties or hardship, provided such relief can be granted without substantial detriment to the public good and without substantially impairing the intent, purpose, and integrity of the zone plan as embodied in the zoning regulations and map.

■ It appears from the foregoing that the exceptional shape or contour of a particular piece of property may be a ground for granting a variance, if the strict application of the zoning regulations would result in "peculiar and exceptional practical difficulties" to the owner. This language may well have some application to the merits of petitioner's case but nowhere in its opinion did the Board advert to this aspect of the matter.

■ It has been the rule, to be sure, in this jurisdiction that one with actual or constructive knowledge that under the zoning code and regulations a particular use would be nonconforming, is ordinarily not entitled to receive a use variance. Taylor v. Board of Zoning Adjustment, D.C.App., 308 A.2d 230 (1973); Clouser v. David,

114 U.S.App.D.C. 12, 309 F.2d 233, cert. denied, 372 U.S. 929, 83 S.Ct. 874, 9 L.Ed. 2d 733 (1962).

■ In the case before us, however, petitioner applied not for a use variance but an area variance. In *Palmer, supra,* Chief Judge Hood, after reiterating the threshold requirement of all variance cases—that the difficulty or peculiarity associated with the applicant's property be unique in that it is uncommon to the entire neighborhood or community, Otto v. Steinhilber, 282 N.Y. 71, 24 N.E.2d 851 (1939)—dealt at length with the different hardship standards applicable to use and area variances, respectively. The burden upon applicants seeking a use variance is more severe in that a showing of "exceptional and undue hardship" must be made. Yet where a substandard lot is the subject of a hardship application, proof of only "peculiar and exceptional difficulties" is involved. As Judge Hood summarized it:

Where substandard lots (those having a smaller size or lesser frontage than the minimum) are involved the practical difficulty is perforce of an extreme nature —an inability to put the lot to any conforming use. In these instances the concepts of "practical difficulty" and "undue hardship" overlap so that the courts often tend to speak of them synonymously. The statute, however, does not require the owner to make such a stringent showing with respect to area variances. Generally it must be shown that compliance with the area restriction would be unnecessarily burdensome. . . . [Palmer v. Board of Zoning Adjustment, *supra* at 542 (footnote omitted).]

■ Additionally, the fact that the owner knew or should have known of the area restrictions before he purchased the property does not alter the lesser standard. In New York, for instance, the rule seems to be

that the "self created hardship" concept does not apply to area variance cases, i.

e., the fact that the condition complained of was self created is not dispositive of the matter but only one factor to be considered by the zoning board in determining whether to exercise its discretion and grant an area variance (see Siegel v. Lassiter, 6 A.D.2d 879, 177 N.Y.S.2d 894). [Ozolins v. Horn, 26 A.D.2d 555, 270 N.Y.S.2d 1001 at 1002–1003 (1966)],

although use variances have been traditionally disfavored in that jurisdiction, if the element of "prior knowledge" was present. *See* Clark v. Board of Zoning Appeals, 301 N.Y. 86, 92 N.E.2d 903 (1950).

The Rhode Island Supreme Court has taken a similar position:

The question of whether an application is entitled to a variance because of hardship flowing from a literal application of the terms of the ordinance *is in no way dependent upon his knowledge of the existence of zoning restrictions affecting the land.* [Denton v. Zoning Board of Review, 86 R.I. 219 at 223, 133 A.2d 718 at 720 (1957). (emphasis supplied).]

At least one other jurisdiction with a statute similar to our own has indicated that the self-imposed aspect of a particular hardship is not a bar to the grant of a variance. Searles v. Darling, 7 Terry 263, 46 Del. 263, 83 A.2d 96 (1951). See also Harrington Glen, Inc. v. Municipal Board of Adjustment, 52 N.J. 22, 243 A.2d 233 (1968).

The reason for this distinction is not hard to fathom. Unless the applicant himself—as a result perhaps of some prior conveyance—is responsible for the irregular shape of the property, he cannot as a practical matter improve the lot in any way that would enable him to realize income or sell it to a purchaser for value. The prospect of a lot remaining permanently vacant in a street devoted to residential use is scarcely calculated to enhance the neighborhood, as abandoned lots tend to become overgrown with weeds or dumping grounds for trash and garbage. Thus, many municipal boards have permitted the owners of substandard lots to erect some kind of building not inconsistent with the rights of abutters to light and ventilation space. The decision of the Board here does not disclose what consideration, if any, was accorded this kind of accommodation.

In making these observations, this court does not seek to limit the Board to any particular theory in its final determination of this case. The Board is certainly free to consider whether the grant of petitioner's application would be a substantial detriment to either the public good or the zoning plan and map. The decision is for the Board to make but that responsibility carries with it the duty to explain fully the reasons underlying its understanding of the factors shaping its ultimate conclusion.

Reversed and remanded for proceedings consistent with this decision.