Norman **BERNSTEIN** et al., Petitioners,

v.

**DISTRICT OF COLUMBIA BOARD OF ZONING ADJUSTMENT, Respondent,**

**Andrew J. Keck, Intervenor.**

**No. 10548.**

District of Columbia Court of Appeals.

Argued Oct. 14, 1976.
Decided July 13, 1977.

---

John F. McCabe, Jr., Washington, D. C., with whom Norman M. Glasgow and Whayne S. Quin, Washington, D. C., were on the brief, for petitioners.

Dennis McDaniel, Asst. Corp. Counsel, Washington, D. C., with whom John R. Risher, Jr., Corp. Counsel, Louis P. Robbins, Principal Deputy Corp. Counsel, and Richard W. Barton, Deputy Corp. Counsel, Washington, D. C., were on the brief, for respondent.

Andrew J. Keck, pro se.

Before KERN, Associate Judge, REILLY, Chief Judge, Retired, and PAIR, Associate Judge, Retired.

PAIR, Associate Judge, Retired:

This court has been petitioned to overturn, as arbitrary and capricious, an Order of the Board of Zoning Adjustment denying a special exception and, as an alternative, a variance.

1. Zoning Regs. § 3105.1.

2. Zoning Regs. § 7104.

3. Zoning Regs. § 7105.

4. D.C.Code 1973, § 5–420(3).

5. The building is located in an R–5–C district which is classified by Zoning Regs. § 3105.1 as general residential. While other uses are permitted in such districts if approved by the Board pursuant to Zoning Regs. § 8207, general office use is not permitted as of right or by special exception. See Zoning Regs. § 1302.1.

6. The Board by an Order entered in its Appeal No. 9990 recognized the legal existence of such nonconforming uses.

7. It does not escape attention that neither the lessee of the space occupied by the restaurant-

The special exception would have permitted in an R–5–C district,[1] the extension[2] of a nonconforming restaurant use and immediately thereafter the change[3] of such use to an office use. The variance[4] would have accomplished substantially the same purpose by permitting in the R–5–C district an office use.

Petitioners Norman Bernstein, et al., are the owners of the Chastleton, an apartment house.[5] On the first floor of the building there are, in addition to residential apartments, nonconforming adjunct commercial uses which include a beauty salon, drugstore, valet shop and a restaurant-caterer.[6]

Appurtenant to the space occupied by the restaurant-caterer is an area of approximately 900 square feet which, since 1968, has been occupied by Stanley Smith Security, Inc., and used by that agency for office and security monitoring purposes. It was into this area that petitioners proposed to extend the nonconforming restaurant and catering use and then change it to an office use.[7]

It is undisputed in the record that the security agency did not obtain, as required by the Zoning Regulations,[8] a certificate of occupancy before commencing its use of the space for office purposes. Such use of the space by the security agency has therefore been, since its inception in 1968, an illegal use rather than a nonconforming use within the purview of D.C.Code 1973, § 5–419.[9]

caterer nor the security agency was a party to the proceedings. Nevertheless, we proceed to disposition of the issues since no question of standing is before us.

8. Zoning Regs. § 1302.1 provides: that "[n]o building . . . shall hereafter be used . . . except in conformity with these regulations."

9. Zoning Regs. § 8104.1 provides that unless a certificate of occupancy was issued or applied for before the effective date of the regulations ". . . no person shall use any structure . . . or part thereof for any purpose other than a one-family dwelling until a certificate of occupancy has been issued to such person stating that such use complies with these regulations and the building code."

■ Petitioners say that for many years prior to 1968 the space was used for office purposes by Hadassah, a women's organization, and the suggestion is that a nonconforming office use resulted.[10] But aside from the unsupported statement of petitioners' Vice President, there is no showing in the record that any such office use was ever sanctioned by an occupancy permit as required by Zoning Regs. § 8104.1 or that it was otherwise a legal use.

The burden of proof rests upon the person asserting the right to the continuation of a non-conforming use that his use existed prior to and at the time of the enactment of the restrictive ordinance, that it was a lawful use, and that it was such a use as is entitled to the court's protection. . . . [82 Am.Jur.2d *Zoning and Planning* § 183 at 694 (1976); footnotes omitted.]

■ The Board is authorized by Zoning Regs. § 8207.2 ". . . to grant special exceptions . . . where in the judgment of the Board such special exceptions will be in harmony with the general purpose and intent of the zoning regulations". Petitioners urge in this connection that the Board should have, by a liberal interpretation of the Zoning Regulations, carved out a special exception, so as to legalize a use which is now and has been since its inception an illegal use.[11] The Board refused, concluding that a special exception, under the facts disclosed by this record, would not be in harmony with the general purpose and intent of the Zoning Regulations. We agree because Zoning Regs. § 7101.1 specifically provides that ". . . it is the purpose of this Article to provide for strict regulation of *nonconforming* uses."

■ In our view the Board's interpretation of the Zoning Regulations was not plainly erroneous or inconsistent with the purpose and intent of such regulations. We must therefore regard the Board's interpretation as controlling. *Dietrich v. BZA,* D.C. App., 320 A.2d 282, 286 (1974); *Rose Lees Hardy Home & School Ass'n v. BZA,* D.C. App., 324 A.2d 701, 706 (1974). *See also Taylor v. BZA,* D.C.App., 308 A.2d 230, 232 (1973).

■ Petitioners contend next that the Board erroneously denied a variance to permit an office use in the R–5–C district. We note at the outset that a use variance may be granted only to alleviate undue hardship:

The variance procedure has many purposes. It is designed to provide relief from the strict letter of the regulations, protect zoning legislation from constitutional attack, alleviate an otherwise unjust invasion of property rights and prevent usable land from remaining idle. These purposes infuse meaning into the phrase "exceptional and undue hardship". The authorities widely recognize . . that the hardship envisioned by the statute must be great. . . . [*Palmer v. BZA,* D.C.App., 287 A.2d 535, 541–42 (1972); footnotes omitted.]

Thus to obtain a variance, it is fundamental that the property owner must prove that he qualifies for the requested relief. *Taylor v. BZA, supra,* 308 A.2d at 234. In this connection, we have held that:

[A] necessary element of proof of such hardship is evidence showing the inability of the applicant to make a reasonable disposition of the property for a permitted use. [*Clerics of Saint Viator, Inc. v. BZA,* D.C.App., 320 A.2d 291, 296 (1974).]

In short, it must be shown that strict application of the Zoning Regulations would preclude the use of the property for any purpose to which it may reasonably be adapted.

10. By D.C.Code 1973, § 5–419, it is provided that the lawful use of a structure as lawful and existing at the time of the adoption of any zoning regulation may be continued subject to conditions therein prescribed. The Zoning Commission is authorized in its discretion to regulate any extension or change of a nonconforming use.

11. In *Besthoff v. Zoning Board of Appeals,* 34 A.D.2d 782, 783, 311 N.Y.S.2d 58, 59 (1970), it was said that "[a] non-conforming use may not be established through an existing use of land which was commenced or maintained in violation of a zoning ordinance; any such use is not an existing lawful use within the meaning of an ordinance which protects existing lawful uses".

*Palmer v. BZA, supra,* 287 A.2d at 542; *A. L. W., Inc. v. BZA,* D.C.App., 338 A.2d 428, 432 (1975). That is, indeed, a heavy evidentiary burden, and it is one that petitioners have not sustained.

Here, it is conceded that the bulk of any hardship falls not on petitioners as owners of the building, but on their tenant who will be forced to relocate its electronic equipment. But as we pointed out in *Palmer v. BZA, supra,* 287 A.2d at 542:

> The tenant's . . . problems . . . are immaterial. At issue are the difficulties of the owner. . . . It cannot be said that the tenant's financial distress has caused the owner any difficulties whatsoever.

*See A. L. W., Inc. v. BZA, supra,* 338 A.2d at 431.

The only hardship petitioners are able to point to that peculiarly affects their interest in the property is the cost of remodeling the unit for residential purposes, and the anticipated difficulty in renting it because of the close proximity to the restaurant-caterer. An examination of the record, however, reveals that there are other residential units near the restaurant-caterer, and that the vacancy rate among the residential apartments on the ground floor of the Chastleton is no greater than the vacancy rate on the upper floors of the building which are completely residential in character.

Petitioners urge that the space in question has been used as an office, albeit illegally, for at least twenty years. This fact, however, is of no consequence since any hardship which results from converting the unit from an illegal use back to a legal use was self-imposed. *Dwyer v. BZA,* D.C. App., 320 A.2d 306 (1974); *Taylor v. BZA, supra,* 308 A.2d at 235; *Clouser v. David,* 114 U.S.App.D.C. 12, 309 F.2d 233 (1962). Moreover, it is well established that a mere desire to use property in a given manner, or

in a manner designed to return a greater profit, does not constitute a showing of an undue hardship that will support the granting of a use variance. *Taylor v. BZA, supra,* 308 A.2d at 236; *Palmer v. BZA, supra,* 287 A.2d at 540. In short, we cannot say that the Board's denial of the variance request was either arbitrary or capricious or unsupported by substantial evidence. The petitioners simply did not carry their burden of proof.

Petitioners contend also that a proper quorum was not present when their motion for reconsideration, reargument or rehearing was denied. Section 5.45 of the "Supplemental Rules of Practice and Procedure Before the Board" provides:

> Any motion to reconsider an application or appeal . . . must be approved by at least four (4) affirmative votes.

The record reveals that petitioners' motion was denied by a 3–0 vote. It is petitioners' contention that § 5.45 requires the presence of 4 of the 5 members of the Board whenever such a motion is decided. The Board did not agree.

As we pointed out above, the Board's interpretation of its own regulations is controlling unless that interpretation is plainly erroneous or is inconsistent with the purpose of the regulations themselves. *Dietrich v. BZA, supra,* 320 A.2d at 286; *Salsbery v. BZA,* D.C.App., 318 A.2d 894, 896 (1974); *Taylor v. BZA, supra,* 308 A.2d at 232.[12]

In our view the Board was within its province in rejecting petitioners' contention regarding the applicable quorum requirements. *See Dietrich v. BZA, supra,* 320 A.2d at 282.

Accordingly, the decision of the Board is

*Affirmed.*

---

**12.** Petitioners contend finally that the Sunshine Act, D.C.Code 1975 Supp., § 1–1503(a), required that the Board's deliberations on petitioners' motion for rehearing be in an open meeting. This contention has previously been rejected by this court in *Dupont Circle Citizens Ass'n v. BZA,* D.C.App., 364 A.2d 610 (1976), and *Jordan v. District of Columbia,* D.C.App., 362 A.2d 114 (1976).

REILLY, Chief Judge, Retired, dissenting:

In my opinion, the Board acted arbitrarily and capriciously in denying petitioners' application and consequently its order should be set aside and the case remanded for further hearing.[1] The Chastleton is a large apartment house situated in an R–5–C district, a classification permitting an odd miscellany of uses—many of them scarcely consistent with a residential neighborhood, e. g., hotels, philanthropic and eleemosynary institutions, kindergartens, private clubs, hospitals, boarding houses, convalescent homes, horticultural nurseries, etc.[2]

The Board is authorized by § 3105.43 of the Zoning Regulations to permit on the main floor of apartment buildings "accessory" uses designed to service the tenant's daily living needs, food, drugs, sundries, and personal services, provided that certain conditions are met. Pursuant to this section, the Chastleton, a few years ago—when it became an apartment house rather than a hotel—was granted permission to continue the existing commercial uses on its ground floor, viz., a beauty salon, a drugstore, a valet shop, and a restaurant/cocktail lounge. These enterprises all front on either 16th Street or R Street, as none of the small apartments on the ground floor are adjacent to either street—their windows overlooking either an interior patio or the parking lot in the rear.

The application which the Board denied related to a section of the ground floor partitioned off from the main lobby which, like the drug store, has windows contiguous to the public entrance to the building on 16th Street. It is obviously not designed to be used as an apartment unit, so its original use—the building was erected in 1924—was presumably a commercial one.[3] Thus we can assume that when the Chastleton ceased to be a hotel, this area fell into the category of a "nonconforming" use. Precisely what this use was is buried in the mists of antiquity, for the spokesman for the current owners (petitioners here) could recall only that in 1948, the Hadassah Society used it for office purposes. Since 1968, this area has been rented to a security agency which put in a telephone monitoring service to receive signals from the security devices the agency installs in homes, offices, and stores of different clients as a protection against burglaries.

According to the "Statement of the Applicant" filed with the Board—

> Although the use is not strictly a neighborhood facility, it does monitor the securing of the Chastleton itself.
>
> The use is not visible from the street and there are no signs or displays on the exterior or interior of the building which would indicate the existence of the use with the exception of lettering on the office door.

If one of the functions of the agency whose continuance on the premises is sought by petitioners is to monitor the security of the building, such use would seem to fall into the category of "personal services" referred to in § 3105.43 of the Zoning Regulations. The mere fact that it was in the business of supplying such services to numerous outsiders would not disqualify it. The testimony taken from the principal opponent of the application reveals that persons living near the Chastleton utilize the pharmacy and the restaurant-catering facility located on its premises.

To force the security agency to move away would plainly detract from the efficacy of the services it furnishes to the Chastleton and its tenants. The greater the distance the monitors are from the scene of an attempted break-in, the less useful their services become. Thus, the result of the

1. D.C.Code 1973, § 1–1510.

2. Zoning Regs. § 3105.3.

3. Under Zoning Regs. § 3105.52, certain commercial accessory uses are permitted in hotels as a matter of right. One of the opponents told the Board that an old floor map indicated that the area was once used as an apartment but as the sketch he submitted was undated and did not conform to the floor plan, the Board excluded it.

challenged order scarcely comports with the duty of landlords in this jurisdiction to maintain whatever security arrangements had been made for the safety of their tenants. *Spar & Lustine Realty Co., Inc. v. Obwoya*, D.C.App., 369 A.2d 173 (1977); *Kline v. 1500 Massachusetts Avenue Apartment Corp.*, 141 U.S.App.D.C. 370, 439 F.2d 477 (1970).

This aspect of the case—the services of the security company to the Chastleton or its tenants—was not mentioned by the Board in its decision. Conceivably, because the witnesses for the applicants did not allude to such services in their testimony, the Board may have inferred that it had no evidence of such use before it. Yet it is by no means clear that the factual recitations in the applicants' statement should not be treated as evidence, provided, of course, that it is submitted to the Board as an exhibit and the author of the statement is present and subject to cross-examination. In this instance, both the principal applicant (petitioners' vice-president) and a representative of the security service testified but the latter's testimony, pursuant to a ruling by the Board, was limited to "the impact of his use on the neighborhood"—on the premise of its pertinence "to the second half of the variance statute." (R. 100).

The reason the Board confined witnesses for the applicants to the variance statute— the alternative ground on which Board action was requested by petitioners—was that at the beginning of the hearing, it ruled that the request for an extension of the nonconforming restaurant use into the disputed area and immediately thereafter a change permitting the current use was out of order, and refused to entertain testimony relating to this portion of the application. In justifying this ruling in its written findings, the Board said:

> The Board would violate the intent of the Zoning Regulations which it administers if it extended the non-conforming use knowing it was never to be established but instead changed to another non-conforming use immediately.

Petitioners assail this ruling as an abuse of discretion, contending that because the Board has the authority to grant a new use or extension under § 7109 of the Regulations, it should grant such special exceptions when the record shows that the type of use—although not a neighborhood facility—is not objectionable (§ 7109–11). Significantly, the Board in its opinion did not find the proposed use here objectionable.[4]

While this court has sustained the Board's interpretation of the Zoning Regulations where such interpretation has not been plainly erroneous or inconsistent with the regulatory purpose,[5] an interpretation which is at odds with the Board's own precedents does not command such deference. Petitioners' research has disclosed numerous cases where the Board simulta-

---

4. The Board could scarcely have done so, as there is not a shred of evidence in the record to indicate that the current five-year use of the premises by a security monitoring service has harmed the neighborhood. In fact, it was not until this lessee applied for a certificate of occupancy that any person living in the vicinity (except the tenants of the Chastleton, who had no objection to the petitioners' request) was even aware of what use was being made of the premises. One of the principal objectors testified that he had assumed the flashing signals came from the apartment house switchboard. Neither he nor any of the other local residents appearing in opposition were able to demonstrate that their property, or that of other nearby residents, had suffered or would suffer if the pending application were approved.

The Board did make a conclusionary finding to the effect that "[t]he preponderance of evidence does not indicate there will be no sub-

stantial detriment to the public good and the variance would impair the intent of the Zoning Regulations."

Granted that proving a negative presents some difficulties, this particular finding clearly lacks evidentiary support as the innocuous nature of the proposed use and the fact that an office use for 25 years had gone unnoticed should have caused any reasonable administrative body to find that no detriment to the public good had resulted, to say nothing of a "substantial" detriment.

5. *Dietrich v. District of Columbia Bd. of Zoning Adjust.*, D.C.App., 320 A.2d 282, 286 (1974); *Rose Lees Hardy Home & S. Ass'n v. District of Columbia Bd. of Zoning Adjust.*, D.C.App., 324 A.2d 701, 706 (1974).

neously changed a nonconforming use and extended the new use to other portions of the building which previously had not been occupied by a nonconforming use. Among the examples cited are these excerpts from three Board decisions:

Re: *Ida W. Rod*

That the appeal of Ida W. Rod, et al. to change a nonconforming use from a barber shop and beauty shop on the first floor to general office use, and to extend the office use to the second floor at 901–907 –26th St. N.W., lot 810, square 16, be granted for the following reasons and subject to the condition hereinafter set forth:

\* \* \* \* \* \*

There was one letter in opposition to the effect that this office would destroy the residential character of the area and would increase the parking difficulty. The Board finds that the evidence refutes the contention of this objector and that these conditions complained of would [*sic*] not existing, and that the former use as a beauty parlor and barber shop would be, per se, more objectionable than the proposed use.

Re: *Chasen et ux.*

That the appeal of Benjamin J. Chasen, et ux. to change a nonconforming use from grocery store to editorial and business offices of publication "World" and extend the office use to the second floor at 53 D St. S.E., . . . be conditionally granted.

\* \* \* \* \* \*

(5) The written opinion of a competent real estate appraiser was introduced into evidence stating that the change of the nonconforming use to offices and the extension of that use to the second floor of the subject property will not adversely affect the use or market value of any property within 300 feet of the site.

\* \* \* \* \* \*

We think that the granting of the relief sought by applicant is in accordance with the zoning regulations in that the requested change of nonconforming use involves a substitution of use which is almost per se less objectionable than the previous area operation due primarily to less traffic generation, pedestrian and vehicular, and although an increase of operational area, will be of a nature which should have no adverse neighborhood impact. Further, we believe the change in use from a grocery store to an office use and the extension of such use to the second floor constitutes an upgrading of the use of the property and that off-street parking and loading requirements (neither of which are provided) will be no more and probably less than those needed for the previous use.

Re: *901 E. Capitol Street*

That the appeal to change a nonconforming use from a retail sales and display of home appliances on the 1st floor to professional office use and to retain the use throughout the building at 901 East Capitol Street, lot 58, square 942, be conditionally granted.

\* \* \* \* \* \*

We are of the opinion that the proposed use will provide to a large extent a neighborhood facility, and further, that the use will not be objectionable and will not affect adversely the present character or future development of the neighborhood, in accordance with these regulations and the Comprehensive Plan for the District of Columbia.

In light of the *Rod, Chasen,* and *901 East Capitol Street* decisions, *supra,* it is difficult to perceive why the Board deemed the procedural aspect of petitioners' application for extension and change of a nonconforming use as contrary to the spirit of the Zoning Regulations, for clearly any distinction between the instant case and those cases should properly be viewed as a distinction without a difference.