VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 138-12-18 Vtec
Docket No. 30-2-19 Vtec

Killington Mountain House, LLC NOV

## ENTRY REGARDING MOTION

Title:          Motion for Partial Summary Judgment (Motion # 1)

Filer:          Kevin E. Brown, attorney for the Town of Killington

Filed Date:     November 13, 2019

Response in Support of Town's motion filed on November 18, 2019 by Attorney Andrew J. Snow on behalf of Interested Persons Lauren Almeda, Paul Bisceglia, Beth Castellini, Erin and Foster Chandler, Edwin Fowler, Clifford & Sally Koch, Catherine Martin, Robert W. Montgomery, Martin Post, Maureen F. Prencipe, Ron Willis, Joan Wise, and Robert T. Montgomery.[1]

Response in Opposition filed on January 14, 2020 by L. Brooke Dingledine, attorney for Killington Mountain House, LLC.

Reply in Support of Summary Judgment Motion filed on January 27, 2020 by Kevin E. Brown, attorney for the Town of Killington.

Further Response in Opposition filed on April 7, 2020 by L. Brooke Dingledine, attorney for Killington Mountain House, LLC.[2]

---

[1] Interested Persons Clifford & Sally Koch, Catherine Martin, Ron Willis, and Joan Wise requested permission to withdraw their appearances. The Court granted their motion to withdraw by Entry Oder filed on March 31, 2020. In re Killington Mountain House, LLC NOV, No. 138-12-18 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Mar. 31, 2020) (Durkin, J.).

[2] This motion came under advisement on April 8, 2020, after the filing on behalf of Appellant Killington Mtn. House. The transfer of this motion to under advisement status was somewhat delayed as the Court addressed various discovery disputes. Nonetheless, the undersigned apologizes to the parties and their counsel for our delay in addressing this motion and the responses thereto.

The motion is **GRANTED**.

Before the Court are two coordinated zoning appeals concerning Appellant Killington Mountain House, LLC's ("KMH") property, located at 268 Eastabrook Road, Killington, Vermont ("the Property"). These appeals arise from two separate Notices of Violations ("NOV") affirmed by the Town of Killington Zoning Board of Adjustment ("ZBA") that cited KMH for violating the Town of Killington's Zoning Regulations adopted on Nov. 27, 2017 ("2017 Bylaws"). The Town of Killington ("Town") argues that KMH's practice of advertising and renting the Property for a maximum occupancy of 28 persons is not permitted for a three-bedroom dwelling unit under the 2017 Bylaws, which would limit the dwelling unit's occupancy to no more than 6 people.

First, KHM seeks to appeal a Dec. 4, 2018, ZBA Decision ("2018 ZBA Decision") affirming the Zoning Administrator's ("ZA") Aug. 2, 2018 NOV ("August NOV") which has been assigned Docket No. 138-12-18 Vtec. Second, KMH seeks to appeal a January 24, 2019 ZBA Decision ("2019 ZBA Decision") affirming the ZA's Nov. 21, 2018 NOV ("November NOV"), which has been assigned Docket No. 30-2-19 Vtec. Both NOVs were reviewed and affirmed by the ZBA pursuant to the 2017 Bylaws and 24 V.S.A. § 4452.

Currently before the Court is the Town's motion for partial summary judgment, pursuant to V.R.C.P 56(a). Presently at issue in these coordinated appeals is whether KMH's use of the Property is a lawful preexisting nonconforming use established before the enactment of the 2006 Town of Killington Bylaws ("2006 Bylaws").

KMH is represented by L. Brooke Dingledine, Esq. The Town is represented by Kevin E. Brown, Esq. The Natural Resources Board has entered its appearance as an Interested Party and is represented by Evan P. Meenan, Esq. The remaining Interested Persons are represented by William H. Meub, Esq., and Andrew J. Snow, Esq.

### Findings of Fact

We recite the following facts solely for the purposes of deciding the pending partial summary judgment motion. These facts do not constitute factual findings, since factual findings cannot occur until after the Court conducts a trial. Fritzeen v. Trudell Consulting Eng'rs, Inc., 170 Vt. 632, 633 (2000) (mem.); see also Blake v. Nationwide Ins. Co., 2006 VT 48, ¶ 21, 180 Vt. 14.

1. The Town of Killington adopted Zoning Bylaws on July 12, 2004 ("2004 Bylaws"). The 2004 Bylaws' definition of dwelling unit does not include a maximum occupancy or a capacity limitation.

2. Mr. Vincent Connelly and Mr. Jeffrey Bauer ("Connelly") purchased a three-bedroom dwelling unit on November 4, 2005, located at 268 Eastabrook Road, Killington, Vermont ("the Property").

3. The November 4, 2005 Property tax return completed and signed at the time of the closing identifies the building on the property as a single-family residence and the primary use as a primary residence.

4. Connelly began use of the property for short-term rentals on December 5, 2005. On December 5, 2005, Connelly entered into a lease with Chuck Whitney ("Tenant") for a two-day lease for a total of $ 1,810.00 and a security deposit of $ 500. The lease provided that "[o]ccupancy (including small children, infants, and visitors) is not to exceed 28 persons."

5. Connelly continued to use the Property for short-term rentals, listing the Property as a five-bedroom house with a maximum of 28 guests permitted, until sale of the Property to Killington Mountain House, LLC. ("KMH") on July 16, 2014.

6. The Vermont Division of Fire Safety ("the Fire Safety Division") conducted an investigation of the Property on January 29, 2014. The Division reviewed the Property under the National Fire Protection Act ("NFPA") 101 Ch. 28 as a "New Hotel and Dormitory" and the Vermont Building Safety Code 2012. The inspection noted 22 deficiencies that required curing by March 3, 2014.

7. Connelly timely cured these deficiencies by March 3, 2014 and the Fire Safety Division thereafter issued KMH a public building permit in 2014.

8. Connelly transferred the property to KMH on July 16, 2014. Mr. Vincent Connelly is a member (owner) of KMH.

9. The July 16, 2014 Property tax return identifies the Seller's use prior to transfer as "commercial" and the buyer's use after transfer as "commercial."

10. The Town of Killington adopted revisions to its Zoning Bylaws on July 10, 2006 ("2006 Bylaws"). The 2006 Bylaws define dwelling unit and dwelling unit capacity, which includes a limitation of two occupants per bedroom.

11. The Town of Killington adopted revisions to its 2006 Zoning Bylaws on November 28, 2017 ("2017 Bylaws"). The 2017 Bylaws' definition of dwelling unit and dwelling unit capacity mirror the 2006 Bylaws' occupancy limitation language.

12. On August 2, 2018 the ZA issued an NOV ("August NOV") notifying KMH that the Property's 2002 Zoning Permit No. 02-064 lists the Property as a three-bedroom dwelling unit, which limits the Property's occupancy to 6 persons pursuant to 24 V.S.A. § 4452 and §§ 610 and 630 of the 2017 Bylaws. The August NOV states that KMH is in violation by listing and allowing occupancy of up to 28 people.

13. On November 21, 2018, the ZA issued another NOV ("November NOV") notifying KMH that the Property is in violation of to 24 V.S.A. § 4452 and § 630 of the 2017 Bylaws by listing and allowing occupancy of up to 28 people.

14. KMH appealed the August NOV and the ZBA affirmed that NOV on December 4, 2018 ("2018 ZBA Decision"). KMH timely appealed that ZBA determination to this Court, which was assigned Docket No. 138-12-18 Vtec.

15. KMH appealed the November NOV and the ZBA affirmed the NOV on January 24, 2019 ("2019 ZBA Decision"). KMH timely appealed that ZBA determination to this Court, which was assigned Docket No. 30-2-19 Vtec.

## Legal Standard

We begin our analysis by reciting the general standard that to prevail on a motion for summary judgment, the moving party must demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." V.R.C.P. 56(a), applicable here through V.R.E.C.P. 5(a)(2). When considering a motion for summary judgment, the nonmoving party receives the benefit of all reasonable doubts and inferences. Robertson v. Mylan Labs., Inc., 2004 VT 15, ¶ 15, 176 Vt. 356. When considering cross-motions for summary judgment, the court considers each motion individually and gives the opposing party the benefit

of all reasonable doubts and inferences.  City of Burlington v. Fairpoint Commc'ns, Inc., 2009 VT 59, ¶ 5, 186 Vt. 332.  In determining whether there is any dispute over a material fact, "we accept as true allegations made in opposition to the motion for summary judgment, so long as they are supported by affidavits or other evidentiary material."  White v. Quechee Lakes Landowners' Ass'n, Inc., 170 Vt. 25, 28 (1999) (citation omitted); V.R.C.P. 56(c)(1)(A).

### Discussion

The Town contends that KMH is bound by the 2017 Bylaws to limit the capacity of its dwelling to "one bedroom for every two occupants for which it is intended to provide for accommodations."  2017 Bylaws § 120 (2); see also 2006 Bylaws § 120 (2).  KMH argues that the practice of advertising and renting the Property for a maximum occupancy of 28 guests predates the enactment of the applicable provisions of the 2006 and 2017 Bylaws and therefore should be regarded as a preexisting nonconforming use.  The Town argues that KMH's use of the property for short term rentals beginning in 2005 did not constitute a lawful preexisting nonconforming use because KMH was not in compliance with 20 V.S.A. §§ 2730(a)(1)(D), 2731, which require a property owner to obtain a public building permit from the Fire Safety Division, which is a subdivision of the Department of Public Safety.  The issue before this Court is therefore whether failure to comply with the provisions of 20 V.S.A. §§ 2730–2731 requiring KMH to obtain a public building permit from the Fire Safety Division renders KMH's use "unlawful."

Pursuant to 24 V.S.A. § 4302(a), preexisting nonconforming uses serve as a mechanism to balance a municipality's interest in allowing for the "appropriate development of all lands" within their community, while respecting the vested rights that landowners may have to maintain lawful preexisting uses of their lands.  24 V.S.A. § 4302(a); Lakehouse Pub & Grille Permit, No. 80-6-13 Vtec, slip op at 8 (Vt. Super. Ct. Envtl. Div. Mar. 19, 2015) (Durkin, J.).  Indeed, preexisting nonconforming uses are exempted from the general requirement of complying with the current zoning regulations, both by statute and the Bylaws themselves.  Budget Inn NOV, No. 50-4-13 Vtec, slip op. at 4 (Vt. Super. Ct. Envtl. Div. May 05, 2015) (Durkin, J.).  While we recognize that lawful preexisting nonconforming structures and uses must be allowed to continue, "[o]ne of the primary goals of zoning is to gradually eliminate nonconforming uses because 'they are

inconsistent with the purpose of developing use-consistent areas in communities.'" In re Casella Waste Mgmt., Inc., 2003 VT 49, ¶ 9, 175 Vt. 335 (quoting In re Gregoire, 170 Vt. 556, 558 (1999) (mem.) (stating that the "prime purpose behind zoning is to bring about the orderly physical development of a community by confining particular uses to defined areas")). As such, municipalities are authorized to "regulate and prohibit expansion and undue perpetuation of nonconformities." 24 V.S.A. § 4412(7)(A).

The 2004 Bylaws, mirroring 24 V.S.A. § 4303 (15), define a nonconforming use as a "[u]se of land or structure which does not comply with all Zoning Regulations, where such use conformed to *all applicable laws, ordinances, and regulations* prior to the enactment of these Regulations."[3] See 2004 Bylaws § 102 (2) (emphasis added). Therefore, a nonconforming use is a use that was lawful when it began, but no longer conforms to land use regulations established since its inception.[4] See Purvis Nonconforming Use, No. 45-5-15 Vtec, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Jan. 27, 2016) (Durkin, J.), *aff'd* 2019 VT 60; see also 24 V.S.A. §§ 4303, 4412(13)-(15). Generally, the landowner (here, KMH) has the burden of showing that the use was "lawful" under the zoning provisions before the amendment. Town of Shelburne v. Kaelin, 138 Vt. 247, 249 (1980) (citing Town of Sandgate v. Colehamer, 156 Vt. 77, 87 (1990)).

In determining "whether a landowner has a right to continue a nonconforming use, it is necessary to determine when the use was once lawful, and then to determine which amendment to the zoning ordinance made the use nonconforming and what was the extent or level of the use at that time." In re Wesco Inc. NOV, No. 106-5-07 Vtec, slip op. at 13–14 (Vt. Envtl. Ct. Mar. 6, 2008) (Wright, J.). Thus, KMH must show that (1) the use existed prior to the bylaw being established and (2) the use conformed to all laws existing prior to the ordinance being established. In re Transtar, LLC, No. 46-3-11 Vtec, slip op at 2 (Vt. Super. Ct. Envtl. Div. May 24,

---

[3] A preexisting nonconforming use is defined by 24 V.S.A. § 4303 (15) as a "use of land that does not conform to the present bylaws but did conform to all applicable laws, ordinances, and regulations prior to the enactment of the present bylaws, including a use improperly authorized as a result of error by the administrative officer."

[4] This Court commonly refers to these uses as "lawful preexisting nonconforming uses." See, e.g., In re Bay Harbor Marina, Inc., No. 118-8-13 Vtec, slip op. at 5 (Vt. Super. Ct. Envtl. Div. Apr. 4, 2014) (Durkin, J.).

2012) (Durkin, J.) (citing In re Transtar, LLC, No. 46-3-11 Vtec, slip op. at 2 (Vt. Super. Ct. Envtl. Div. Sept. 15, 2011) (Durkin, J.); see also Town of Shelburne v. Kaelin, 136 Vt. 248, 251–52 (1978).

Here, KMH provided evidence that Connelly began to use the Property for short-term rentals, with a listed capacity of up to 28 people, beginning on December 5, 2005. The 2004 Bylaws in place when Connelly began to use the Property for short-term rentals include no limiting language concerning dwelling unit capacity and define dwelling unit as "[a]ny structure or portion thereof used by one family and providing housekeeping facilities to that family." 2004 Bylaws § 120. The Town later adopted revised bylaws in 2006 which included a dwelling unit capacity requiring that "[a] dwelling unit shall [. . .] have one bedroom for every two occupants for which it is intended to provide accommodations." See 2006 Bylaws § 120(2). This provision was also included in the revised 2017 Bylaws. 2017 Bylaws § 129(2). Thus, the use existed prior to the establishment of the 2006 Bylaw's dwelling unit capacity limitation.

Next, we look to whether Connelly complied with all laws existing prior to the ordinance being established. The Town argues that Connelly's use of the property on December 5, 2005 caused the dwelling to become a "public building," pursuant to 20 V.S.A. § 2730, which required Connelly to obtain a public building permit to ensure compliance with fire safety codes prior to commencing use of the Property. See 20 V.S.A. § 2730(a)(1)(D) (defining a public building as "a building in which people rent accommodations, whether overnight or for a longer term"). 20 V.S.A. § 2730 was enacted in 2004 and therefore predates the Connelly's use of the property for short-term rentals in 2005. Indeed, Connelly did not undergo an inspection or obtain a public building permit until after January 29, 2014.

KMH asserts that noncompliance with laws or regulations other than the zoning ordinances or land use regulations are beyond the scope of determining whether the use was "lawful." As a result, KMH contends that this Court need not consider whether Connelly was in compliance with 20 V.S.A. § 2730 in a preexisting nonconforming use analysis. We disagree.

As a general rule, the illegality of a prior use results in the denial of nonconforming use status. Carroll v. Hurst, 431 N.E.2d 1344, 1347 (Ill. App. Ct. 1982); see also Smalls v. Board of Standards and Appeals 211 N.Y.S.2d 212 (N.Y. Ct. Cl. 1961) (holding that in the absence of a certificate of occupancy prevents a landowner from acquiring nonconforming status when the

use was established under a former zoning ordinance); Bernstein v. District of Columbia Bd. of Zoning Adjustment, 376 A.2d 816 (D.C. 1977). Under the guidance of In re Chamberlin, this Court is not limited to considering only zoning regulations when evaluating whether a preexisting nonconforming use is lawful. In re Chamberlin, 134 Vt. 359, 359 (1976) (holding that a landowner's failure to obtain license under a junkyard licensing statute precluded attainment of nonconforming use status). In Chamberlin, the Vermont Supreme Court concluded that because the landowner "took no steps whatever toward legal approval . . . [when] at some approvals, at least, were required during all the period of his operation," the landowner was not in compliance with "all applicable all applicable laws, ordinances, and regulations." Id. at 362.

Other jurisdictions have tailored the general rule to provide an exception where the purpose of the statute that has been violated is not related to the land use or zoning. *See*, Trailer City, Inc. v. Board of Adjustment, 218 N.W.2d 645 (Iowa 1974) (holding that failure to obtain or renew a license required by the state board of health did not invalidate nonconforming status); Carroll, 431 NE2d at 1344 (stating that a failure to obtain a license for the operation of a junkyard required by state motor vehicle code did not invalidate nonconforming use status); and Board of Selectmen of Wrentham v. Monson, 247 N.E.2d 364 (Mass. 1969). Indeed, most jurisdictions require that the illegality "involve [] violations of statutes designed to regulate the use of land" and not "statutes whose purpose is totally unrelated to land use planning." Carrol, 431 NE2d at 1348 (citing County of Cook v. Triem Steel and Processing, Inc., 153 N.E.2d 277) (Ill. App. Ct. 1958).

While Chamberlin does not require a violated statute relate to land use and planning to invalidate nonconforming use status, we see value in the policy of requiring that there be adherence to all "applicable" laws. 24 V.S.A. § 4303 (15). Here, 20 V.S.A. §2731(a) regulates the authority of the Fire Safety Division to inspect public buildings, proscribe standards necessary to protect the public, and issue public building permits that ensure compliance with these standards. Of particular concern are public buildings that are used to "rent accommodations, whether overnight or for a longer term." 20 V.S.A. § 2730(a)(1)(D). Through this language, the Fire Safety Division is tasked to look at a building's use as a means of granting authority to inspect and issue public building permits. Indeed, the permit requirements of 20 V.S.A. §2730 are therefore necessary and essential for the safe use and enjoyment of the property and the public

buildings thereon.  Moreover, this case concerns the use of the Property as a short-term rental and the building as a public accommodation.  Thus, we consider 20 V.S.A. § 2730 as an applicable law inextricably linked with the use of the Property, thereby granting authority to require adherence to the law for the use of the property to secure lawful pre-existing  nonconforming use status.

Here, 20 V.S.A. § 2730 was established in 2004, prior to Connelly's use of the Property for short-term rentals.  An Act Relating to the Creation of a Fire Safety Division, Pub. Act No. 141 (Adj. Session 2003).  The Fire Safety Division undertook an inspection of the Property on January 29, 2014 and found 22 deficiencies that needed to be corrected, by March 3, 2014, before a public building permit could be issued.  KMH cured these deficiencies and later obtained a public building permit.  Connelly was therefore not in compliance with all applicable laws until 2014, resulting in its characterization as an <u>unlawful</u> preexisting nonconforming use.  Since the dwelling unit capacity language was included in the 2006 Bylaw and Connelly was not then in compliance with 20 V.S.A. § 2730, KMH has no vested right to lawfully continue this practice, since they have failed to show that it was ever lawfully established.  We therefore conclude that the 2017 Bylaws in effect when the Town issued the August and November NOVs govern these appeals and the short-term rental of the Property to more than 6 people does not quality as a lawful preexisting nonconforming use, pursuant to 14 V.S.A. § 4303(15) and § 120(2) of the 2004 Bylaws.

KMH requested, in the event this Court concludes that KMH's use does not qualify as a lawful preexisting nonconforming use, that they be permitted to (1) assert the affirmative defenses of equitable estoppel and violation of public will and amend its Statement of Questions accordingly, and (2) request the right to supplement the record after receiving written discovery responses and conducting depositions.

When considering a request to amend a statement of questions, we review the request in a manner similar to requests to amend a complaint in a civil proceeding, pursuant to V.R.C.P. 15(a). In re Buchwald Home Occupation Cond. Use Permit, No. 181-12-13 Vtec, slip op, at 2 (Vt. Super. Ct. Envtl. Div. April 1, 2014) (Walsh, J.).  Parties are permitted to amend a statement of questions once as a matter of course and thereafter trial courts are encouraged to allow pleading amendment, so long as an opposing party will not be prejudiced and the amendment request "is

not obviously frivolous nor made as a dilatory maneuver in bad faith."[5]  Hunters, Anglers & Trappers Assoc. of Vermont, Inc. v. Winooski Valley Park Dist., 2006 VT 82 at ¶17, 181 Vt. 12, quoting Bevins v. King, 143 Vt. 252, 254-55; In re Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. July 13, 2016) (Durkin, J.).

The general policy of this Court seeks to resolve issues on their merits. Appeal of Town of Fairfax, No. 45-3-03 Vtec, slip op. at 3 (Vt. Envtl. Ct. June 13, 2005) (Wright, J.).  We perceive little potential for unfair disadvantage to be caused to the Town by KMH's requested limited revisions to their Statement of Questions.  Here, the tailoring of KMH's Statement of Questions will better clarify the remaining issues on appeal in both coordinated appeals.  Moreover, KMH has already raised selective enforcement and constitutional due process challenges in both coordinated appeals, which remain before this Court.  We therefore **GRANT** KMH's request to amend their Statement of Questions and direct that they file its Amended Statement no later than **Monday, December 7, 2020 at 4:00 pm**.

## Conclusion

We conclude that KMH has failed to meet their burden to establish lawful preexisting nonconforming use and the 2017 Bylaws in effect when the Town issued the August and November NOVs govern these two coordinated appeals.  We therefore **GRANT** partial summary judgment in favor of the Town and **UPHOLD** the ZBA's application of the 2017 Bylaws.  We direct KMH to revise the Statement of Questions to reflect this decision and **GRANT** KMH's request to amend the Statement of Questions.  We further direct our Court Operations Manager to schedule these two appeals for a status conference, after December 7, 2020, so that the Court may discuss with the parties how a trial may be scheduled.  We note for the parties that we wish to schedule the trial in the coming months, which would necessitate the trial being conducted via WebEx or

---

[5] The Vermont Supreme Court has "encouraged trial courts to deny motions to amend when the amended pleadings present a 'futile'" claim that would not survive a motion to dismiss." In re Werner Conditional Use, No. 44-4-16 Vtec, slip op. at 7 (Vt. Super. Ct. Envtl. Div. Aug. 31, 2016) (Durkin, J.) (citing Prive v. Vt. Asbestos Group, 2010 VT 2, ¶ 13, 187 Vt. 280).  A claim is considered "futile" when "it appears beyond doubt that there exist no facts or circumstances that would entitle Appellant to relief."  Colby v. Umbrella, Inc., 2008 VT 20, ¶ 5, 184 Vt. 1 (quoting Alger v. Dep't of Labor & Indus., 2006 VT 115, ¶ 12, 181 Vt. 309).

a similar video conferencing platform, pursuant to the Supreme Court's Emergency Administrative Order AO 49 and its amendments.

In light of the Court granting the Town's motion for partial summary judgment, the parties should be prepared to discuss at the next conference what factual and legal issues are left for the Court to address at trial.

**So Ordered.**

Electronically signed on November 17, 2020 at Brattleboro, Vermont, pursuant to V.R.E.F. 7(d).

_____
Thomas S. Durkin, Superior Judge
Environmental Division